UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville Division

EMILY D. JORDAN, et al.,                    )
On behalf of themselves and all others      )
similarly situated,                         )
                                            )
                    Plaintiffs,             )        Civil Action: 3-02-1132
                                            )        Judge Trauger
v.                                          )
                                            )
IBP, INC. and TYSON FOODS, INC.,            )
                                            )
                    Defendants.             )
_____ )


# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Gregory K. McGillivary
Molly A. Elkin
Lauren E. Schwartzreich
WOODLEY & McGILLIVARY
1125 15th Street, NW, Suite 400
Washington, DC 20005
(202) 833-8855
(202) 452-1090 (Facsimile)

Charles P. Yezbak, III
The Pilcher Building
144 Second Avenue North, Suite 200
Nashville, Tennessee 37201
(615) 250-2000
(615) 250-2020 (Facsimile)

Attorneys for Plaintiffs

Table of Contents

I.      SUMMARY OF ARGUMENT AND CONCISE STATEMENT OF FACTS…...1

II.     STATEMENT OF FACTS……………………………………………………..6

III.    STANDARD OF REVIEW……………………………………………………..6

IV.     ARGUMENT……………………………………………………………………..7

A.      Employees Must be Compensated for All Time From the First Principal
        Activity to The Last Principal Activity During the Continuous Work Day……..7

        1.      The Supreme Court Defines "Work" Broadly……………………………7

        2.      The DOL's Longstanding Regulations Defining "Hours Worked,"
                as Well as Its Interpretation of  Those Regulations Are Entitled to
                Controlling Deference………………………………………………….…8

        3.      Activities that Are Integral and Indispensable to the Plaintiffs'
                Principal Activity Are Compensable…………………………………10

B.      The Plantiffs' Retrieval of a Frock From Their Assigned Locker Starts the
        Compensable Workday and their Storage of a Clean Sanitary Frock in their
        Locker ends the Compensable Workday……….............................................14

C.      The Plaintiffs' Donning and Doffing of other Required Sanitary and Protective
        Clothing and Equipment and their Performance of Preparatory Activities on Plant
        Premises are also Integral and Indispensable to the Plaintiffs' Principal
        Activity.......................................................................................................19

        1.      Donning and Doffing Sanitary Clothing and Protective Equipment
                Are Integral and Indispensable to Meat Production and
                Constitute Work……………………………………………………....19

        2.      Washing Hands and Sanitizing Equipment Are Integral and
                Indispensable to Meat Production and
                Constitute Work ……………………………………………………..22

        3.      Duties Such as Collecting and Sharpening Knives are Integral and
                Indispensable to Meat Production and
                Constitute Work ……………………………………………………22

D.      Tyson Cannot Rely on a "De Minimis" Defense…………………………...24

E.      Defendants Do Not Provide Plaintiffs a Bona Fide Meal Period………………..27

i

F.     Defendants are not Entitled to the Good Faith Defense
Provided by Section 259 of the Portal Act………………………………………30

       1.     DOL's Enforcement Policy Mandates Compensation for Donning,
Doffing and Cleaning……………………………………………………31

       2.     Defendants Continue to Willfully Ignore DOL's Enforcement Policy….32

G.    Plaintiffs Are Entitled To Liquidated Damages Pursuant to Section 216(b)…….34

# TABLE OF AUTHORITIES

## FEDERAL CASES

2006 U.S. App. LEXIS 14566 (6th Cir. 2006) ................................................................ 8

*Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003), *aff'd on other grounds*, 546
U.S. 21 (2005) ..................................................................................................... 12, 23, 29, 30

*Alvarez v. IBP, Inc.*, 546 U.S. 21 (2005) ................................................................ *pasim*

*Alvarez v. IBP, Inc.*, 2001 U.S. Dist. LEXIS 25344 (E.D. Wash. 2001) ........................ 28

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ..................... 3, 15, 16, 24, 26

*Armour & Co. v. Wantock*, 323 U.S. 126 (1944) ............................................................. 7

*Auer v. Robbins*, 519 U.S. 452 (1997) ............................................................................. 9

*Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (9th Cir. 2004) ............................ 19, 21

*Barnhart v. Walton*, 535 U.S. 212 (2002) ...................................................................... 9

*Birdwell v. City of Gadsen , Ala.*, 970 F.2d 802 (11th Cir. 1992) .................................. 7

*Bonilla*, 487 F.3d at 1342 ............................................................................................. 11

*Bouchard v. Regional Governing Board of Region V Mental Retardation
Services*, 939 F.2d 1323 (8th Cir. 1991) ................................................................ 30

*Brock v. City of Cincinnati*, 236 F.3d 793 (6th Cir. 2001) ....................................... 4, 13, 25

*Brock v. Claridge Hotel & Casino*, 664 F. Supp. 899 (D.N.J. 1986), *remanded on
other grounds*, 846 F.2d 180 (3d Cir.), *cert. denied*, 488 U.S. 925 (1988) ............... 30

*Carlson v. Leprino Foods Co*, 2006 U.S. Dist. LEXIS 48589 (W.D. Mich 2006) .......... 12

*Chavez v. IBP, Inc.*, 2004 U.S. Dist. LEXIS 28837 (E.D. Wash. Aug. 18, 2004) ............ 30

*Chavez v. IBP, Inc.*, 2005 U.S. Dist. LEXIS 29714 (E.D.  Wash. May 16, 2005) ..... 29, 30

*Chevron U.S.A., Inc.,v. Natural Resources Defense Council, Inc.*, 467 U.S. 837
(1984) ....................................................................................................................... 9

*Chao v. Akron Insulation and Supply, In.* 2006 LEXIS 14566 (6th Cir. 2006).........8,11

*Coalition for Government Procurement v. Federal Prison Industrial*, 365 F.3d 435 (6th Cir. 2004) ........................................................................... 9

*Duchon v. Cajon Co.*, 840 F.2d 16 (6th Cir. 1988)........................................................... 11

*Dunlop v. City Electric, Inc.*, 527 F.2d 39 (5th Cir. 1976)........................................ 11, 26

*Elwell v. University Hospital Home Care Serv.*, 276 F.3d 832 (6th Cir. 2002) ..... 35, 36, 5

*Farmer v. Ottawa County*, 2000 U.S. App. LEXIS 7224 (6th Cir . 2000)........................7

*Fast v. Applebees's International, Inc.,* No. 06-4 146, 2007 WL. 1309680 (W.D. Mo. 2007)................................................................................................. 26

*First National' l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)...................... 6

*Garcia v. Tyson Foods, Inc.*, 474 F. Supp. 2d 1240 (D. Kan. Feb. 16, 2007).............. 8, 13

*Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912 (N.D. Ill. 2003) ................... 24

*Hill v. United States*, 751 F.2d 810 (6th Cir. 1984), *cert. denied*, 474 U.S. 817 (1985)................................................................................................... 27

*Kansas Bankers Surety Col. v. Bahr Consultants, Inc.*, 69 F. Supp. 2d 1004 (E.D. Tenn.1999) ........................................................................................ 6

*Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706 (2d Cir. 2001)..................................................................................... 23, 27

*Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984)........................................... 25, 26

*Long Island Care at Home, Ltd v. Coke*, __ U.S. __, 127 S. Ct. 2339 (2007) ............. 9, 10

*Lopez v. Tyson Foods,* 2007 WL 1291101 (D. Neb. 2007)................................................. 8

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)............... 6

*McClanahan v. Mathews*, 440 F.2d 320 (6th Cir. 1971)................................................... 36

*Mitchell v. Greinetz*, 235 F.2d 621 (10th Cir. 1956)...................................................... 30

*Mitchell v. King Packing Co.*, 350 U.S. 260 (1956) ...................................................... 23

*Mitchell v. Turner*, 286 F.2d 104 (5th Cir. 1960) .......................................................... 30

iv

*Reich v. IBP, Inc.* 1996 WL 137817 (D. Kan. 1996) ...................................................... 25

*Reich v. IBP, Inc.*, 38 F.3d 1123 (1994) ........................................................................... 8

*Schneider v. City of Springfield*, 102 F. Supp. 2d 827 (S.D. Ohio 1999) ....................... 36

*Saunders v. John Morrell & Co.*, No. C88-4 143, 1992 WL 53 (N.D. Iowa 1992) ......... 25

*Steiner v. Mitchell*, 350 U.S. 247 (1956) .......................................................................... 7

*Tenn. Coal, Iron & R.R. v. Muscoda Local No. 123*, 321 U.S. 590 (1944) ....................... 7

*Tum v. Barber Foods, Inc.*, 360 F.3d 274 (1st Cir. 2004) .......................................... 12, 24

*Williams v. Ford Motor Co.*, 187 F.3d 533 (6th Cir. 1999) ......................................... 6, 32

*Young v. Barnhart*, 415 F. Supp. 2d 823 (M.D.Tenn. 2006) ............................................. 9

*Wage and Hour Opinion Letter*, 1993 WL. 901156 (Mar. 19, 1993) .............................. 24

## DOCKETED CASES

*Chao v. Tyson Foods, Inc.*, No. 2:02-cv-01174 (VEH) ..................................................... 33

## FEDERAL STATUTES AND REGULATIONS

9 C.F.R. 416.5 ................................................................................................................... 22

29 C.F.R. 1910.132 ........................................................................................................... 22

29 C.F.R. § 785.18 ............................................................................................................ 29

29 C.F.R.§785.19 .......................................................................................................... 5, 27

29 C.F.R. 785.47 ............................................................................................................... 24

29 C.F.R. §785.7 ................................................................................................................. 8

29 C.F.R. 790.6(a) ....................................................................................................... 2, 10

29 C.F.R. §790.8 n. 65 ............................................................................................... *passim*

29 U.S.C. § 203(g) .............................................................................................................. 7

29 U.S.C. 207(a)(1) ............................................................................................................ 7

29 U.S.C. § 216(b) ................................................................................ 35

29 U.S.C. § 254 ..................................................................................... 10

29 U.S.C. § 259 .................................................................................. 5, 30

29 U.S.C. § 260 ..................................................................................... 35

Fed. R. Civ. P. 56 ................................................................................ 1, 6

The Portal-to-Portal Act of 1947, 29 U.S.C. 251 *et seq* ....................... 10

**MISCELLANEOUS**

*DOL Wage and Hour Advisory Memorandum No. 2006-2* (May 31, 2006) ............. *passim*

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

In accordance with the Court's June 13, 2007 Order (Docket No.232) and pursuant to Fed. R. Civ. P. 56, plaintiffs respectfully move for partial summary judgment on defendants' liability under the Fair Labor Standards Act ("FLSA") for failing to pay them for all hours of work during the continuous workday each shift.

## I.    SUMMARY OF ARGUMENT AND CONCISE STATEMENT OF FACTS

Defendants are liable to plaintiffs for failing to pay them for actual time spent performing pre-shift and post-shift donning, doffing, sanitizing required protective clothing and equipment as well as the attendant walking and waiting time, from the commencement of the first principal activity that they are required to perform on defendants' premises (i.e., retrieving their sanitary frock from an assigned locker) to the last principal activity performed on defendants' premises(i.e., stowing a clean and sanitary frock and any other required protective equipment and clothing in their assigned lockers).

In *Alvarez v. IBP*, Inc., 546 U.S. 21 (2005), the Supreme Court recently reaffirmed the principle known as the "continuous workday" rule, which requires an employer to pay an employee for ***all*** activities that occur between the first and last principal activities of the employee's workday. *See Alvarez* 546 U.S. at 28, quoting 29 C.F.R. 790.6(a). The Court reiterated its long-held view that any activity that is integral and indispensable to a principal activity is itself a principal activity and, therefore, is compensable under the FLSA. *Alvarez,* 546 U.S. at 37. The unanimous Supreme Court accepted the lower courts' determinations that donning and doffing required sanitary and protective clothing and equipment were integral and indispensable to poultry and meat processing employees' principal work activities and held that such activities commenced and concluded the continuous workday. *Alvaerz ,* 546 U.S. at 32-33.

The Court noted that in the context of meat and poultry processing, donning of certain types of protective gear is "always" essential if the worker is to do his job and that "the locker rooms where the special safety gear is donned and doffed are the relevant 'place of performance' of the principal activity that the employee was employed to perform." *Id*. at 34.

Following the Court's decision in *Alvarez*, the U.S. Department of Labor ("DOL") issued a Wage and Hour Advisory Memorandum explaining the impact of *Alvarez* and reiterating its long-held view that donning and doffing activities required to be performed on poultry and meat processing plant premises start and end the continuous workday. *DOL Wage and Hour Advisory Memorandum No. 2006-2*, May 31, 2006; App. 272-75). DOL specifically advised that **obtaining** gear at the beginning of the workday is a principal activity in these businesses that trigger the commencement of the compensable workday. *Id*., p. 1, n.1., p. 3. ("the compensable day starts once the employee has obtained the gear required to be stored on the premises by taking an item out of a bin, a locker or another designated storage area.").

Under controlling law and DOL regulations, as well as DOL's *interpretation* of its regulations, plaintiffs' compensable workday begins when they perform the first principal activity of retrieving the required Tyson-issued sanitary frock from their assigned locker. This activity is integral and indispensable to Tyson's maintenance of sanitary conditions for meat processing and necessary to the production of a quality product.

Here, the undisputed factual record reveals that the plaintiffs cannot take the frock home with them, they cannot don it outside the plant, and they are required to retrieve it from their assigned locker and don it prior to entering the production floor. Accordingly, obtaining and donning the frock constitutes "work" because this activity must be done on the employer's premises and is pursued primarily for the employer's benefit. *See Anderson v. Mt. Clemens*

2

*Pottery Co.*, 328 U.S. 680,693 (1946) (donning aprons and overalls "are clearly work" because these activities are "controlled or required by the employer and pursued necessarily and primarily for the employer's benefit. They are performed solely on the employer' premises and are a necessary prerequisite to productive work.")

In addition to the frock, plaintiffs must collect and don a combination of the following items on plant premises prior to performing meat processing work on the production floor: hard hat, hair net, hearing protection, plastic sleeves, rubber gloves, rubber apron, cut-resistant sleeves, cut-resistant gloves (or mesh glove or skinner glove), scabbard, steel, hook, hook holder, and belly guard. On the production floor and prior to commencing meat processing duties, plaintiffs are required to sanitize all non-fabric items that come in contact with meat and plaintiffs must wash their hands in the production hallway. Plaintiff knife-users must collect and sharpen their knives prior to performing meat production duties while non-knife-users perform other preparatory duties such as wiping down their work stations. These activities are all compensable as part of the continuous workday. Moreover, they constitute "work" and are integral and indispensable to meat production duties.

In contravention of the well-established case law, and in obstinate opposition to DOL's consistent mandate that employers in the meat processing industry (and, specifically, these defendants) record and pay their workers for actual hours of work, including time spent donning, doffing, and cleaning protective and sanitary clothing and equipment, defendants IBP, Inc. and Tyson Foods, Inc. (hereinafter collectively "Tyson" or "defendants") fail to compensate their Goodlettsville meat processing workers for this time. Instead, Tyson's pay practices pay plaintiffs from a pre-determined start time which corresponds to the time that Tyson believes meat will pass that worker's station on the production line (hereinafter, "Pay Start Time").

Because plaintiffs are subject to discipline for failing to complete all donning, doffing, sanitizing and preparatory activities by their Pay Start Time, these activities must be completed prior to their Pay Start Time and, as such, are performed without compensation.

Similarly, Tyson's pay system fails to record and compensate plaintiffs for activities that they are required to perform on plant premises after clocking-out. These uncompensated activities include time plaintiffs spend sanitizing equipment, doffing equipment, exchanging their soiled frock for a clean frock, and stowing their required sanitary and protective equipment, as well as a clean, sanitary frock in their lockers.

Tyson may not rely on the narrow *de minimis* defense to absolve it of its FLSA violations. Tyson's timekeeping system is capable of recording the plaintiffs' pre- and post-shift work time. The size the plaintiffs' claim, which involves daily donning and doffing activities over a seven year period for over 600 plaintiffs, in the aggregate, is substantial. In addition, plaintiffs' donning and doffing activities occur regularly each workday. Accordingly, under controlling case law, a *de minimis* defense is unavailable to Tyson. *Brock v. City of Cincinnati*, 236 F.3d 793, 804 (6th Cir. 2001).

Plaintiffs also move for summary judgment with respect to defendants' liability for failing to provide them with a bona fide meal period pursuant to 29 C.F.R.§785.19. Defendants automatically dock plaintiffs 30 minutes of pay each shift for a so-called meal period even though plaintiffs perform work (including required donning, doffing, washing and production activities) during their uncompensated meal period and are not completely relieved from duty for the entire 30 minutes of unpaid time. Defendants, and not plaintiffs are the predominate beneficiaries of this uncompensated time and must pay plaintiffs for it.

4

Finally, plaintiffs request that the Court enter summary judgment in their favor on defendants' Section 259 good faith defense to plaintiffs' claims because defendants cannot establish that they acted in good faith, in conformity with, and in reliance on a specified DOL enforcement policy that would relieve them of the requirement of compensating the plaintiffs for all hours of work. 29 U.S.C. § 259. Indeed, this Court has already determined, as a matter of law, that the conduct that the defendants cite as an "enforcement policy is "not sufficient to establish one." (Docket No. 178, p. 32). Defendants had the burden to prove entitlement to the Section 259(a) good faith defense. Because this Court is "unpersuaded" by defendants' evidence, summary judgment in favor of plaintiffs on this issue is warranted. Moreover, defendants cannot possibly establish "good faith" here where the evidence reveals that DOL repeatedly told Tyson that its compensation practices violated the FLSA. Similarly, because the undisputed factual record shows that defendants failed to act with subjective good faith and objective reasonableness with respect to their failure to properly compensate their employees for all hours of work, plaintiffs are entitled to liquidated damages on their claims pursuant to §216(b) of the FLSA. 29 U.S.C. §216(b). *Elwell v. Univ. Hosp. Home Care Serv.*, 276 F.3d 832, 840 (6th Cir. 2002).

## II.   STATEMENT OF FACTS

Submitted with this memorandum is plaintiffs' statement of material facts as to which there is no genuine dispute as well as an appendix containing supporting sworn declarations, deposition testimony and exhibits.[1] References herein to plaintiffs' statement of facts shall be "Fact ¶" followed by the appropriate paragraph number.

## III.   STANDARD OF REVIEW

---

[1] Unreported decisions and U.S. Department of Labor Opinion letters are also included in the Appendix.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). While the evidence should be viewed in the light most favorable to the non-moving party, *see Kansas Bankers Surety Col. V. Bahr Consultants, Inc*., 69 F. Supp.2d 1004, 1011 (E.D. Tenn.1999), "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial'" and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475  U.S. 574, 587 (1986), quoting *First Nat'l  Bank of Arizona v. Cities Serv. Co*., 391 U.S. 253, 289 (1968). Notably, if the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmoving party has the burden (e.g., here, defendants' Section 259 and Section 216(b) good faith defense), the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## IV.  ARGUMENT

### A.  Employees Must be Compensated for All Time From the First Principal Activity to The Last Principal Activity During the Continuous Work Day

#### 1.  The Supreme Court Defines "Work" Broadly

The FLSA requires employers to compensate employees at one and one-half times their regular rate of pay for all hours worked in excess of forty hours in a workweek. *See* 29 U.S.C. 207(a)(1). The statute reflects "a Congressional intention to guarantee either regular or overtime compensation for all actual work or employment." *Tenn. Coal, Iron & R.R. v. Muscoda Local No. 123,* 321 U.S. 590, 597 (1944).

Although the FLSA does not specifically define the terms "work" or "workweek," the Supreme Court has construed these terms broadly. [2] In *Tennessee Coal,* the Court defined "work" "as meaning physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." 321 U.S. at 598. The Court subsequently clarified that this definition was "not intended as a limitation on the Act," and that even non-exertional acts, such as waiting, can be work under the FLSA. *Armour & Co. v. Wantock,* 323 U.S. 126, 133 (1944)("[A]n employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen.").

The Supreme Court has long held that donning and doffing and similar activities constitute "work" under the Act regardless of the effort required to perform such activities. [3] *See Steiner v. Mitchell*, 350 U.S. 247, 248 (1956) (concluding that time that employees spent on employer's  premises donning and doffing work clothes provided by their employer before and after their shifts had "to be included in measuring the work time for which compensation is

---

[2] Section 3(g) of the Act provides that "'employ' includes to suffer or permit to work." 29 U.S.C. § 203(g).
[3] The question of whether a particular set of facts and circumstances constitutes work under the FLSA is a question of law. *Farmer v. Ottawa County***,** 2000 U.S. App. LEXIS 7224  (6th Cir . 2000), c*iting Birdwell v. City of Gadsen , Ala.*, 970  F.2d 802, 807 (11th Cir. 1992).

7

required under the Fair Labor Standards Act."). Most recently, in *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), a case involving *the defendants here* and workers who, like the plaintiffs in this case, were required to don and doff protective and sanitary clothing and equipment before and after their shifts in Tyson's meat processing plant in Pasco, Washington, a unanimous Supreme Court reaffirmed that an inquiry as to whether physical or mental exertion occur is unnecessary for an activity to constitute work under the FLSA. *IBP v. Alvarez*, 546 U.S. at 25.[4] *See Chao v. Akron Insulation and Supply , Inc.,* 184 Fed. Appx. 508; 2006 U.S. App. LEXIS 14566 (6th Cir. 2006) (citing *IBP v. Alvarez* as holding that employees are to be compensated for time spent walking between changing areas and work areas after donning or doffing).

> ## 2. The DOL's Longstanding Regulations Defining "Hours Worked," as Well as Its Interpretation of Those Regulations Are Entitled to Controlling Deference

Consistent with the Supreme Court's broad definition of work, the DOL defines the workweek as including "all the time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." 29 C.F.R. §785.7. DOL's regulations further recognize that "there need be no exertion at all and that all hours are hours worked which the employee is required to give his employer...." *Id.* Moreover, DOL's regulation specifically provides that any clothes changing on the employer's premises, which is

---

[4] The Tenth Circuit's contrary holding in *Reich v. IBP, Inc.,* 38 F.3d 1123, 1125-26 (10th Cir. 1994) -- that donning and doffing standard protective gear such as safety glasses, earplugs, hard hats, and safety shoes was not work because it took "all of a few seconds and requires little or no concentration" -- has been effectively overruled by the Supreme Court's decision in *Alvarez,* providing that exertion is unnecessary and sustaining the Ninth Circuit's holding that donning and doffing required protective gear constitutes work under the FLSA regardless of the amount of exertion required. 546 U.S. at 25, 30; *see Garcia v. Tyson Foods, Inc.,* 474 F. Supp. 2d 1240, 1246 (D. Kan. Feb. 16, 2007) (noting that *Alvarez* significantly undermined *Reich* holding that donning and doffing standard equipment is not work under the FLSA and suggesting that the Tenth Circuit, "if given the opportunity to revisit the issues in *Reich,* would approach its analysis of the pertinent issues differently in light of *Alvarez"); Lopez v. Tyson Foods,* No. 06-459, 2007 WL 1291101, at *3 (D. Neb. March 20, 2007) (adopting *Garcia's* analysis that *Alvarez* has "severely undermined" the *Reich* case).

required by law, the employer, or the nature of the work constitutes compensable work. 29 CFR §790.8 n. 65.

DOL's longstanding regulations addressing the meaning of "hours worked" are entitled to controlling deference. *See Barnhart v. Walton*, 535 U.S. 212, 221-22 (2002)(deference under *Chevron U.S.A., Inc., v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 844 (1984) is appropriate absent notice-and comment rulemaking in light of the "interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time."); *see also Coalition for Gov't Procurement v. Fed. Prison Indus.,* 365 F.3d 435, 477 (6th Cir. 2004), *citing Barnart,* 535 U.S. at 220 (We "normally accord particular deference to an agency  interpretation of 'longstanding' duration.'" ); *Young v. Barnhart,* 415 F. Supp.2d 823 (M.D.Tenn. 2006)  ("Case law in this circuit and elsewhere makes it clear that pure legal issues may be decided by the courts, but where the relevant statute is "silent or ambiguous with respect to the specific issue," then courts must sustain the Agency's statutory interpretation, *i.e.,* regulation, if it is "based on a permissible construction" of the pertinent statute).

Furthermore, courts must give controlling deference to DOL's *interpretation* of its own regulations unless it is "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997)(internal quotation marks and citation omitted).  As the Supreme Court recently reiterated in a unanimous opinion in *Long Island Care at Home, Ltd v. Coke* __ U.S. __, 127 S. Ct. 2339 (2007), where DOL's interpretation of its own regulation "'reflect[s] [the DOL's] fair and considered judgment on the matter in question,'" the DOL's interpretation is "controlling."  This is true whether DOL's interpretation is articulated in opinion letters, legal

briefs or other interpretative materials including an internal Wage and Hour Memorandum written in response to issues in litigation.  *Id.* at 2349, 2351-52. In so concluding, the *Coke* Court repeatedly underscored DOL's power and unique expertise to fill gaps in the meaning and scope of the FLSA.  E.*g., id.* at 2342, 2345-47, 2349.

### 3.    Activities that Are Integral and Indispensable to the Plaintiffs' Principal Activity Are Compensable

The Portal-to-Portal Act of 1947, 29 U.S.C. 251 *et seq.* ("Portal Act"), creates a limited exception to the FLSA's general rule that an employer must compensate its employees for all hours worked. Section 4 of the Portal Act, 29 U.S.C. § 254, relieves an employer of responsibility for compensating employees for travel and other "preliminary" and "postliminary" activities "which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. 254(a). By its terms, the Portal Act only excludes preliminary and postliminary activities when they occur outside the workday, which is defined as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." 29 C.F.R. 790.6(b); *see* 29 U.S.C. 254(a); *Alvarez,* 546 U.S. at 28-29. This principle, known as the "continuous workday" rule, requires an employer to pay an employee for *any* activity that occurs between the first and last principal activities of the employee's workday. *See Alvarez,* 546 U.S. at 28, *quoting* 29 C.F.R. 790.6(a).[5]

In *Alvarez*, the Supreme Court reiterated its long-held view that "any activity that is

---

[5] The "*de minimis*" rule discussed *infra* has nothing to do with whether an activity begins or ends the workday for purposes of the Portal Act. Instead, under the language of that Act, any "principal activity" can begin and end the workday, regardless of how long that activity takes to perform. 29 U.S.C. 254(a); *see,* 29 C.F.R. 790.8(b) n.63 (construing legislative history to indicate that "any amount of time" will suffice). The examples cited in the regulations of picking up tools or receiving instructions before traveling to a work site demonstrate that the amount of time devoted to an activity is not material in determining whether it is a principal activity that starts the workday. *See* 29 C.F.R. 790.8(b).

'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under § 4(a) of the Portal-to-Portal Act," and therefore is compensable under the FLSA. 546 U.S. at 37.. Such an activity commences the continuous workday, and marks the beginning of compensable work time. *Alvarez,* 546 U.S. at 37; *Bonilla v. Baker Concrete Constr., Inc.,* 487 F.3d 1340, 1342 (11th Cir. 2007) (if employees "engag[e] in work-related activity that is 'integral and indispensable' to their work," then travel occurring after such activity is compensable) (citing *Alvarez); see also DOL Wage and Hour Advisory Memorandum No. 2006-2,* at 2 (May 31, 2006)(App. 272-75) (Time spent after the first principal activity, including time spent walking, is compensable).

An activity is integral and indispensable to a principal activity if it is "performed as part of the regular work of the employees in the ordinary course of business." *Duchon v. Cajon Co*., 840 F.2d 16 (6th Cir. 1988) (App. 303-06), citing *Dunlop v. City Electric, Inc.,* 527 F.2d 39, at 401 (5th Cir. 1976). This is a functional test, focusing on the relatedness of the activity to the primary duties of the job. *See* 29 C.F.R. 790.8(c) ("Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."); *Chao v. Akron Insulation and Supply, Inc*., 2006 App. Lexis 14566 *6 (6th Cir. 2006)(App. 313-18) (receiving assignment, loading trucks with material and equipment and traveling to work site compensable because required by employer and were integral and indispensable to performance of principal activity of installing insulation at off-site locations).

In *Alvarez,* the Supreme Court reaffirmed its holding in *Steiner v. Mitchell* that changing clothes on the employer's premises can be integral and indispensable to an employee's principal activities in the context of donning and doffing sanitary and protective equipment in defendant's meat processing plant in Pasco, Washington. Both appellate courts in the consolidated cases the

Court was considering had determined that donning and doffing the required sanitary and protective gear was integral and indispensable to the poultry and meat processing employees' principal work activities. *See Tum v. Barber Foods Inc.,* 360 F.3d 274, 279 (1st Cir. 2004); *Alvarez v. IBP Inc.,* 339 F.3d 894, 903 (9th.Cir. 2003).

A unanimous Court accepted the lower courts' determinations, and held that such integral and indispensable activities were themselves principal activities that commenced the continuous workday. *Alvarez,* 546 U.S. at 32-33.(during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is compensable). *See Carlson v. Leprino Foods Co*, 2006 U.S. Dist. LEXIS 48589 (W.D. Mich. 2006) (App. 307-12)(recognizing that after *Alvarez,* "an employer will seldom have defenses applicable to an employee who either works overtime and/or is paid close to minimum wage to the extent that the employee is uncompensated for required donning and doffing of company uniforms when performed in the workplace.")

Moreover, the *Alvarez* Court specifically concluded that *"the locker rooms where the special safety gear is donned and doffed are the relevant 'place of performance' of the principal activity that the employee was employed to perform within the meaning of §4(a)(1)."* *Alvarez,* 546 U.S. at 34. (emphasis supplied). The Court noted that the donning of certain types of protective gear is **"*always*"** essential if the worker is to do his job. *Id.* at 40. (emphasis in original).

On May 31, 2006, following the Supreme Court's ruling in *Alvarez*, the U.S. DOL issued a Wage and Hour Advisory Memorandum (the exact same type of internal Department memorandum to which the Supreme Court deferred in *Coke*) in which it explained the impact of *Alvarez* and reiterated its long-held view that donning and doffing activities required to be

performed on poultry/meat plant premises start and end the continuous workday. Specifically, DOL advised that *obtaining* gear at the beginning of the workday and doffing it at the end of the workday, if required to do so on the employer's premises, are principal activities in the meat and poultry processing businesses that trigger the commencement and conclusion of the compensable workday. *DOL Wage and Hour Advisory Memorandum No. 2006-2*, May 31, 2006 p.1 n.1, p. 3; (internal quotations omitted), App. 272-75, ("Since, like donning, obtaining the gear (as opposed to waiting to obtain the gear) is always essential if the worker is to do his job, the compensable day starts once the employee has obtained the gear required to be stored on the premises by taking an item out of a bin, a locker or another designated storage area."). [6] Moreover, DOL explained that "whether required gear is 'unique' or 'non-unique' is irrelevant to whether donning and doffing is a principal activity." *W & H Advisory Memorandum 2006-2* at 3. Instead, the appropriate inquiry to determine whether a donning/doffing activity is a principal activity which would commence/conclude the workday is whether "the employer or the nature of the job mandates that it take place on the employer's premises." *Id*

Notably, the "work" analysis under *Tennessee Coal* and its progeny is not a "threshold" issue separate and independent from the "integral and indispensable" issue. *Garcia v.Tyson Foods, Inc.,* 474 F. Supp. 2d 1240, *9 (D. Kan. May 2, 2007). "Rather, the two concepts are intertwined such that courts, in determining whether an activity constitutes compensable "work," analyze whether that activity is an integral and indispensable part of the principal activities for which employees are employed." *Id. See, e.g., Brock v. City of Cincinnati,* 236 F.3d 793, 801

---

[6]During the parties' last Case Management Conference, defendants' counsel encouraged the Court to await the Supreme Court's decision in *Long Island Care at Home v. Coke* prior to allowing plaintiffs to file the instant motion for summary judgment because the decision, he argued, would dictate the level of deference that should be accorded to the *Department of Labor Wage and Hour Advisory Memorandum 2006-2* governing the legal principles in this case. As set forth above, the *Coke* Court concluded that a DOL Wage and Hour Advisory Memorandum is entitled to deference even though it is issued to internal Department personnel and even where it is written in response to litigation. *Coke*, 127 S.Ct. 2349.

(6th Cir. 2001) ("[T]o determine whether the officers performed compensable 'work,' the district court had to confront … [whether the activity was] an integral and indispensable part of the principal activities for which the handlers were employed.").

**B.    The Plantiffs' Retrieval of a Frock From Their Assigned Locker Starts the Compensable Workday and their Storage of a Clean Sanitary Frock in their Locker ends the Compensable Workday**

Defendants are liable to the plaintiffs in this case for failing to pay for the work they are required to perform on plant premises during the continuous workday from the time that they obtain their frocks in their lockers until they doff and stow a clean frock in their lockers at the end of the day.  Any other conclusion would result in a departure from Supreme Court precedent and would disregard (rather than defer to) the DOL's clear mandate defining the beginning and end of the compensable workday.

The undisputed factual record shows that defendants do not compensate the plaintiffs for the actual time that they spend engaged in the following pre-shift activities which all must be performed on plant premises: retrieving a frock from an assigned locker on the second floor of the plant; properly donning the frock; retrieving and donning a hairnet, beard net, hard hat and hearing protection from the individual worker's locker; retrieving a combination of the following items from the individual worker's locker: safety glasses, green rubber gloves, plastic arm sleeves, Plexiglass forearm guard, mesh glove, belly guard, rubber apron, skinner gloves, scabbard, steel, hook, and hook holder; carrying all equipment retrieved from the locker room on the second floor down two flights of stairs to the production hallway; waiting in the production hallway for supervisors to open the production floor doors; washing hands in sinks in production hallway; walking through sanitizing foot bath into the production floor; sanitizing all non-fabric PPE and other required items (i.e., plastic arm sleeves, green rubber gloves, Plexiglass forearm

14

guard, hearing protection, hard hat, mesh glove, belly guard, rubber apron, skinner gloves, scabbard, steel, hook, and hook holder) by dipping them in a sanitation tank and shaking them dry; donning all sanitized non-fabric PPE and other required items; collecting and donning cotton gloves, cut resistant gloves, cut resistant sleeves, and latex gloves; sanding steel; performing tasks such as bringing trays to the work station, wiping down work station, collecting knives from the knife cart, and sharpening knives; and walk to work station and wait for first piece of meat to arrive. Fact ¶ 29.

Under controlling law, the plaintiffs' compensable workday begins when they perform the first principal activity of retrieving the required Tyson-issued, specially designed sanitary frock from their assigned locker. See Facts ¶¶ 24-25, 32. This required task must be performed by *all* of the plaintiffs (whether they use knives or not) on plant premises, in the locker room. Facts ¶ 32. Workers must don their frocks prior to entering the production floor. Facts ¶ 39. They retrieve and don their frocks in the locker room. Facts ¶¶ 32, 34. Thus, under Alvarez, the locker room is the "place of performance" of the principal activity that the plaintiffs were employed to perform. See *Alvarez,* 546 U.S. at 34.

Indeed, the plaintiffs *cannot* perform meat production duties without properly donning the sanitary frock. Facts ¶ 24. Donning a clean, sanitary frock is "integral and indispensable" to meat processing duties.[7] Food-safety considerations drove the design of the Tyson-issued frock that plaintiffs are required to wear to perform meat production duties each shift. Facts ¶ 27. Specifically, the frock was specially designed with only internal pockets (no external pockets) below the waist, a snap closure, and knit elastic cuffs. Facts ¶ 25-26. The design reduces the

---

[7] Donning and doffing the sanitary frock also constitutes "work" under Supreme Court precedent as well as DOL's regulations because the plaintiffs are required to don and doff the frock on plant premises and doing so benefits Tyson because it allows Tyson to produce a sanitary product of high quality for its customers. Facts ¶ 24-38. *See, Mt. Clemens Pottery*., 328 U.S. at 693 (donning overalls and aprons constitutes work where donning is done solely on the employer's premises, is required by the employer, and is done for the employer's benefit).

possibility of workers contaminating the meat by reducing the risk of objects falling out of a worker's external pocket onto the product and by precluding the worker's street clothing from protruding beyond the frock sleeve. Facts ¶¶ 27-29. Requiring workers to wear these sanitary frocks benefits Tyson by ensuring a sanitary environment for meat processing. (*Id.*)

The "indispensable and integral" nature of the frock is evident in Tyson's Good Manufacturing Practices which prohibit workers from wearing (and thus donning or doffing) their frocks outside, in restrooms, or in the cafeteria "to protect [] products and maintain quality." Facts ¶ 30. Thus, Tyson's requirement that plaintiffs don and doff their frocks inside the plant directly benefits it by protecting Tyson's product and maintaining quality and ensuring that sanitary conditions for meat production are maintained. Obtaining and donning the specially designed sanitary frock, therefore, are necessary and essential for maintaining sanitary conditions and a quality product. Facts ¶ 31.

Failure to wear the frock on the production floor (or donning it in prohibited areas including the cafeteria, outside, or in restrooms) jeopardizes sanitary conditions (Facts ¶¶ 30-31) and accordingly, results in employee discipline (Facts ¶ 30). On this record, retrieving and donning the frock is integral and indispensable to the plaintiffs' principal activity of processing meat and, as such, is itself a principal activity. *See Alvarez,* 546 U.S. at 37; *W & H Advisory Memorandum 2006-2* at 1.

Plaintiffs are required to retrieve a clean sanitary frock from their lockers before the start of their scheduled shift. Retrieval of the frock from the locker under *Alvarez* and the DOL's *W & H Advisory Memorandum 2006-2* commences the compensable workday. *Alvarez,* 546 U.S. at 34 ("Accepting the necessary import of our holding in *Steiner,* we conclude that the locker rooms where the special safety gear is donned and doffed are the relevant 'place of performance' of the

principal activity the employee was employed to perform"); *see W & H Advisory Memorandum 2006-2*, ("the compensable day starts once the employee has obtained the gear required to be stored on the premises by taking an item out of a bin, a locker, or another designated storage area."). It is beyond dispute that the locker room is where the plaintiffs obtain their frocks. Facts ¶ 32. In addition, Tyson provides these locker rooms as a place for the workers to don and doff their frocks and the locker room is the place where the plaintiffs perform the activity of donning and doffing their frocks. Facts ¶¶ 32, 34.

Thus, obtaining the frock from the locker triggers the compensable workday under *Alvarez* and the DOL's guidance to which the court must defer under *Coke*. Similarly, the end of the continuous workday occurs when plaintiffs doff and stow a clean and sanitary frock in their assigned locker. Tyson requires its workers to return their soiled frocks to the frock room attendant after clocking out each day. Facts ¶ 40. At the frock room, which is located at the far end of the locker room on the second floor of the Plant, workers are required to exchange their soiled frock for a clean sanitary frock. Facts ¶¶ 34, 40. Workers are then required to stow the clean sanitary frock in their assigned lockers before leaving the plant. Facts ¶ 40. Tyson requires these activities to be performed on plant premises following each shift and failure to do them in conformance with Tyson policy results in discipline. Facts ¶¶ 30, 40. As such it is a principal activity which concludes the compensable workday. *See DOL W & H Advisory Memorandum 2006-2*, (doffing of required gear is within the continuous workday when the employer, or the nature of the job, mandates that it take place on plant premises); *see also* 29 C.F.R. 790.8 n. 65 (same).

All time spent between the first principal activity (i.e., frock retrieval) and the employees' last principal activity (frock storage), including walking and waiting time, is part of the

continuous workday and is not subject to the Portal Act's exclusion from compensable time. *Alvarez*, 546 U.S. at 37. Nevertheless, and despite having been told repeatedly by DOL that such time is compensable, see section F, *infra*, Tyson fails to pay the plaintiffs for this time. Facts ¶¶ 35-36.. Specifically, Tyson's "Alternative Time and Attendance System" does not pay the plaintiffs for *any* activities that they are required to perform during the period of time from when they retrieve their frock from the locker room until the plaintiff's Pay Start Time. Facts ¶¶ 11-23, 35-37. Indeed, Tyson's "Alternative Time and Attendance System" does not even pay plaintiffs from the time that they clock-in. Facts ¶¶ 16-18. As defendants admit, clock-in is for attendance purposes only. Fact ¶ 15. Instead, plaintiffs' compensation will not begin until their pre-determined Pay Start Time which is a set time that corresponds to the time that Tyson believes that meat will be at the individual plaintiff's station on the line. Under this system, defendants make plaintiffs continue to perform donning and related activities *even after* they clock-in but do not pay them for any of this post-clock-in/pre-Pay Start Time work time even though it is captured in Tyson's "Alternative Time and Attendance System." Facts ¶¶ 11, 18-19.[8]

Similarly, at the end of the shift, Tyson's Alternative Time and Attendance System does not pay plaintiffs for any of the activities that they are required to perform after clocking-out. Facts ¶ 21. Specifically, Tyson fails to pay its workers for washing equipment, sanitizing non-fabric equipment and clothing (discussed *infra)*, doffing hard hat, hair net, beard net, hearing protection, and frock, walking, waiting to exchange the frock, frock exchange, and frock and

---

[8] Defendants placed their time clocks inside the production floor and control when plaintiffs may obtain access to the floor. Facts ¶¶ 14, 129(f). Plaintiffs cannot clock-in until after they perform many of their pre-shift duties including retrieving and donning the frock, washing hands, walking through a sanitation foot bath, collecting and sanitizing equipment, as well as attendant waiting and walking required. Fact ¶¶ 20, 129. They continue to perform uncompensated work after clocking-in on the production floor, including collecting and donning cotton and latex gloves, collecting and donning cut-resistant sleeves and cut-resistant gloves, collecting and sharpening knives, sanding steel, and preparing their work stations. Fact ¶ 129.

equipment storage in the locker. These duties are performed after clocking out and, accordingly, without compensation.[9]  Facts ¶¶ 21, 132-157.  Tyson's failure to pay plaintiffs for these compensable activities, which are all part of the continuous workday, violates the FLSA.

C.  **The Plaintiffs' Donning and Doffing of other Required Sanitary and Protective Clothing and Equipment and their Performance of Preparatory Activities on Plant Premises are also Integral and Indispensable to the Plaintiffs' Principal Activity**

The plaintiffs' donning, doffing, washing, and sanitizing activities before, during, and after their shifts constitute "work" under the FLSA because they are controlled or required by Tyson and pursued for Tyson's benefit and are performed on Tyson's premises. *See, Ballaris v. Wacker Siltronic Corp.,* 370 F.3d 901, 911-12 (9th Cir. 2004) (donning and doffing cleanroom "bunny suits" constitutes "work" under the FLSA because it is "activity, burdensome or not, performed pursuant to [the employer's] mandate for [its] benefit as an employer.") (internal quotation marks and citation omitted).  Similarly, like donning and doffing the required frock, these activities are also all integral and indispensable to plaintiffs' principal activity and are thus, compensable.[10] 29 CFR §790.8 n. 65 (any clothes changing on the employer's premises, which is required by law, the employer, or the nature of the work is compensable).

1.  **Donning and Doffing Sanitary Clothing and Protective Equipment Are Integral and Indispensable to Meat Production and Constitute Work**

Tyson requires all of its employees to wear, at a minimum, a sanitary white frock, discussed *supra*, hard hat, hair net, beard net for men with facial hair, hearing protection and rubber or latex gloves. Facts ¶¶ 41, 44, 61.  In addition to this required sanitary and protective

---

[9] Some plaintiffs were able to wash their equipment prior to clocking out, while others were told to "clock out, clean up and go home" and were not allowed to wash equipment while on the clock. Facts ¶¶ 137-139. This merely raises an issue of damages, not liability.  In other words, the plaintiffs who were able to wash while still on the clock may have a smaller post-shift damages claim than the plaintiffs who were required to wash after clocking out.

[10] Assuming the Court concludes that the retrieval and stowage of the frock starts and stops the continuous work day, the Court need not make an independent determination that the activities described in this section constitute "work" or that they are "integral and indispensable" activities because these activities take place between frock retrieval and storage and are, as such, compensable as part of the continuous work day.

equipment and clothing, Tyson requires its knife-users to wear cut-resistant gloves,[11] rubber gloves, cut-resistant sleeves, Plexiglas forearm guard, belly guard, scabbard, steel, hook, and hook holder. Facts ¶¶ 65, 71-115.[12] Other workers, including stylers who arrange the meat in trays and tray transferers who place the tray on the appropriate conveyor belt, wear plastic sleeves over their frock sleeves. Facts ¶¶ 66-70. While other workers, including Bag Openers, Pump Operators, Indexers and Skinners, who are exposed to extreme moisture and blood, are required to wear rubber aprons over their frocks. Facts ¶ 122.

The required PPE is meant to protect the plaintiffs from injuries. Facts ¶¶ 41, 71, 76, 84-85, 89. This benefits Tyson because reducing the risk of injured knife-users helps in the efficient production of meat. If workers leave the line due to injuries, Tyson's production would be disrupted by its workers' absence from the line. *See e.g.,* Facts ¶ 173. Donning the required PPE and other sanitary clothing is necessary and essential to the safe production of meat. Fact ¶¶ 31, 41, 44, 50, 68, 125.

These donning duties are also integral and indispensable to plaintiffs' meat processing duties, in part, because Tyson's policies require the plaintiffs to perform them on plant premises. Facts ¶¶ 124, 125-128. *See* 29 CFR 790.8 n. 65; *W & H Advisory Memorandum,* 2006-2 at 3. Specifically, the facts show that plaintiffs are required to don their fabric protective and sanitary clothing and equipment on Tyson's premises because Tyson distributes these items (i.e., cotton gloves, cut-resistant gloves, and cut-resistant sleeves), as well as the latex gloves, on the production floor. Facts ¶ 126. Accordingly, Tyson controls these donning activities.

---

[11] Depending on job assignment, knife-users may be required to wear a rubber skinner glove or a stainless steel mesh glove on the non-knife hand. (Facts ¶¶ 122, 129(d)).

[12] Tyson identifies some of these items as personal protective equipment ("PPE") (i.e., hard hat, hearing protection, safety glasses, mesh glove cut-resistant glove, belly guard, cut resistant sleeves, Plexiglass forearm guard, rubber apron, and skinner gloves), while other items are simply required sanitary clothing or equipment including the frock, hook, scabbard, hook holder, steel and latex or rubber gloves. For purposes of the legal analysis, the distinction is irrelevant. Tyson requires all of these items to be donned by the plaintiffs and controls how and where these items can be donned and doffed.

Likewise, because Tyson requires the plaintiffs to sanitize all non-fabric equipment and clothing on the production floor (see section C (2) below), these items must be donned on plant premises after they are sanitized. Facts ¶ 128. In other words, the workers cannot don these items at home and wear them into the plant because: (1) the items must be sanitized prior to donning (Facts ¶ 128); (2) the items are donned over the frock, which must always be donned inside the plant (Facts ¶ 127); and (3) the plaintiffs are not permitted to wear their PPE outside the plant (Facts ¶ 125).

Further evidence that donning and doffing activities are required and controlled by Tyson (and thus, both "work" and "integral and indispensable" to the principal activity performed) is found in Tyson's disciplinary policies. Workers are subject to discipline for failing to wear all required PPE, and other required clothing and equipment on the production floor and for wearing these items in prohibited areas such as outside, in the cafeteria or in the restroom. Facts ¶¶ 123, 125, 30. Indeed, one of the ten representative plaintiffs, was in fact disciplined on three separate occasions for failing to wear all required PPE on the production floor. Facts ¶¶ 30, 42 (Plaintiff Dunivant disciplined for clocking in without having had first donned sanitary white frock, for failure to wear safety glasses while operating pump and failure to wear hearing protection). Moreover, the workers are subject to Tyson's Code of Conduct during all "hours that Team Members are on company property." Facts ¶ 123. Thus, Tyson maintains control over the workers for purposes of disciplining them during the time that they spend retrieving, donning, sanitizing, doffing and exchanging their sanitary and protective clothing and equipment on plant premises yet fails to pay them for these activities. Such facts "weigh heavily in favor of a determination that the activity is not excluded by the Portal-to-Portal Act." *Ballaris,* 370 F.3d at 911 (citing *Dunlop,* 527 F.2d at 399-40 1).

Moreover, the plaintiffs' donning activities benefit Tyson because they allow the company to comply with federal food sanitation and safety regulations. *See, e.g.,* 9 C.F.R. 416.5; 29 C.F.R. 1910.132; Facts ¶ 41. For this reason, too, the activities are integral to the performance of meat processing duties.

### 2. Washing Hands and Sanitizing Equipment Are Integral and Indispensable to Meat Production and Constitute Work

The plaintiffs are required to wash their hands in the production hallway and they are required to sanitize all of their non-fabric clothing and equipment (i.e., plastic sleeves, rubber gloves, rubber apron, belly guard, scabbard, steel, hook, hook holder, mesh gloves, and skinner gloves) in a chemical sanitation tub located on the production floor. Facts ¶ 129. Tyson controls the hand-washing through its supervisors and quality control personnel who stand in the production hallways prior to each shift to ensure that the workers properly wash their hands. Facts ¶¶ 129, 179.

Tyson also controls the sanitizing activities performed by plaintiffs. Defendants mandate that sanitizing take place on the production floor. Facts ¶ 128-129. Defendants ensure that plaintiffs follow this policy by posting supervisors and quality control personnel by the sanitation tubs to ensure that the workers properly sanitize all of their non-fabric equipment and clothing prior to performing work on the production line and after the end of the shift. Facts ¶¶ 128-129, 142-143. Sanitizing equipment and clothing that will be used in meat production duties and washing hands prior to touching meat that will be sold to Tyson's customers are integral and indispensable to ensuring a sanitary, clean and quality product. These activities also constitute "work" because they benefit Tyson and are performed under Tyson's control.

### 3. Duties Such as Collecting and Sharpening Knives are Integral and Indispensable to Meat Production and Constitute Work

Plaintiff knife-users who use a straight steel (i.e., knife sharpening tool) are required to sand their steel prior to the commencement of meat production activities. Facts ¶ 105. In addition, plaintiff knife-users are required to collect knives from a knife cart on the production floor, steel the knife against their steel to ensure that the blade is straight and sharp and holster the knife in the scabbard until they assume their place on the production line. Facts ¶¶ 116-117, 121. These activities are integral to the plaintiffs' principal activity of cutting meat. *Mitchell v. King Packing Co.,* 350 U.S. 260, 263 (1956) (knife-sharpening at a meat packing plant was integral and indispensable to employees' principal activities because knives had to be "razor sharp" for proper performance of the work). Plaintiffs who are not knife-users perform other required preparatory activities on the production floor prior to the start of their scheduled shift including bringing trays (in which they will arrange the meat once production begins) to the work station, wiping down the work station, and setting up ergonomic step stools at their work stations. Facts ¶ 129. Defendants do not pay plaintiffs for these activities (*id.*) even though they are integral and indispensable to the plaintiff's principal duty and constitute work. *See Kosakow v. New Rochelle Radiology Associates, P.C.,* 274 F.3d 706, 718 (2d Cir. 2001) ("If the proper performance of [the employees'] job required the preparatory work to be completed when the first walk-in patient could potentially arrive, this time should have been counted, regardless of whether anybody specifically instructed them to arrive early."); 29 C.F.R. 790.8(c); *Wage Hour Advisory Memorandum,* 2006-2, at 1.

On this record, the donning, doffing, washing, sanitizing, and preparatory activities at issue in this case clearly constitute "work" under the FLSA. *See Alvarez,* 339 F.3d at 902, *aff'd,* 546 U.S. 21(2005) (meat processing employees' donning and doffing of required smocks,

hardhats, hairnets, earplugs, face shields or safety glasses, gloves, plastic sleeves and leggings, aprons, and safety boots and shoes are "work"); *Tum v. Barber Foods, Inc.,* 360 F.3d 274, 277, 279 (1st Cir. 2004), *aff'd, in part, on other grounds,* 546 U.S. 21(2005) (poultry processing workers donning and doffing required lab coats, hairnets, earplugs, safety glasses, steel-toed boots, aprons, and gloves was work under the FLSA); *Fox v. Tyson Foods, Inc.,* 2002 WL 3 2987224, at *9 (N.D. Al. Feb. 1, 2002)(order adopting magistrate judge's report and recommendation) (poultry workers' donning and doffing of protective clothing and equipment qualifies as "work"); *Gonzalez v. Farmington Foods, Inc.,* 296 F. Supp. 2d 912, 923 (N.D. Ill. 2003) (meat processing employees' "donning and doffing of sanitary and safety equipment, equipment cleaning and knife sharpening constitute work"). For similar reasons, these activities are all integral and indispensable to plaintiffs' principal activity.

### D. Tyson Cannot Rely on a "*De minimis*" Defense

The Supreme Court in *Mt. Clemens* recognized that employers do not need to pay employees for otherwise compensable time if that time is "*de minimis.*" *See Mt. Clemens,* 328 U.S. at 692 ("When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.").[13] Pursuant to the DOL's implementing regulation, the narrow "*de minimis*" exception "applies *only* where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities." 29 C.F.R. 785.47 (emphasis added). If it is feasible for the employer to record the time, then the employer cannot escape liability for paying its employees for this time by relying on the *de minimis* rule. *See id* ("An employer may not arbitrarily fail to count as hours worked any part,

---

[13] Since the *de minimis* rule provides employers a defense to paying for otherwise compensable time under the FLSA, Tyson has the burden of proof on this issue. *See, e.g., Brock v. Mercy Hosp. & Med. Ctr.,* No. 84-1309, 1986 WL 12877, *5 (S.D. Cal. 1986).

however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him."); *see also* Wage and Hour Opinion Letter, 1993 WL 901156 (Mar. 19, 1993) ("Even if the time so spent is not great, but can be ascertained, it must be considered hours worked for purposes of the FLSA.").

In applying this regulation, this Circuit looks to three factors to determine whether a claim for uncompensated time is *de minimis*: "1) the practical administrative difficulty of recording the additional time; 2) the size of the claim in the aggregate; and 3) whether 'the claimants performed the work on a regular basis." *Brock v. City of Cincinnati,* 236 F.3d 793, 804 (6th Cir. 2001) (quoting *Lindow v. United States,* 738 F.2d 1057, 1062-63 (9th Cir. 1984)). As the Ninth Circuit stated in *Lindow,* "[t]here is no precise amount of time that may be denied compensation as *de minimis."* 738 F.2d at 1062.

It is undisputed that Tyson has a timekeeping system that records the time Tyson employees clock in and out each day. Fact ¶¶ 15, 21. Tyson's Alternative Time and Attendance System, which can track time on a minute by minute basis, demonstrates that it is administratively feasible for Tyson to record all the time its employees spend working. Fact ¶ 17. Even though the employees' pre-shift and post-shift activities may not be performed in any prescribed manner (e.g., some plaintiffs may don their gloves before attaching their belly guard while others may don the belly guard prior to donning gloves) and the actual time spent by employees may vary depending on a number of factors, this is not sufficient to establish that, "in this day of modern technology, [Tyson] cannot record the compensable work performed by its employees." *Reich v. IBP, Inc.,* No. 88-2171, 1996 WL 137817, at *7 (D. Kan. 1996) (citing *Saunders v. John Morrell & Co.,* No. C88-4 143, 1992 WL 53 1674 (N.D. Iowa 1992). Indeed, Tyson already pays the plaintiffs based on their clock-in times but only when it serves to reduce

25

the plaintiffs' pay. Thus, Tyson's Time and Attendance System is set up to pay the workers on a minute by minute basis but only for purposes of docking their pay. Facts ¶ 16-17.

A basic principle under the FLSA is that employers are responsible for the recording of work time. As the Court observed in *Mt. Clemens,* "it is the employer who has the duty under § 11(c) of the Act [29 U.S.C. 211(c)] to keep proper records of wages, hours and other conditions and practices of employment." 328 U.S. at 687. Accordingly, the employer must structure its operations in a manner that permits the accurate recording of this time. Here, Tyson's failure to accurately record time the plaintiffs spend donning, doffing, washing, sanitizing and performing preparatory activities is inexcusable given that Tyson easily could have moved its time clocks to the locker room where the first and last compensable activities are performed. Because Tyson ***can*** record all work time, it is administratively feasible for Tyson ***to*** record the time its employees spend donning and doffing. Thus, Tyson cannot rely on the *de minimis* defense to avoid paying for this time. *See Fast v. Applebee's Int'l., Inc.,* No. 06-4 146, 2007 WL 1309680, at \*9 (W.D. Mo. May 3, 2007) (denying *de minimis* defense because, "even if the amount of time is small, it could easily be measured").

As the *Brock/Lindow* second factor makes clear, the *de minimis* defense does not apply separately to each particular activity viewed in isolation. A *de minimis* determination instead requires consideration of the ***aggregate*** amount of time for which an employee seeks compensation. *See Alvarez,* 546 U.S. at 39, 42; *Lindow,* 738 F.2d at 1063; *Dunlop,* 527 F.2d at 401; *Wage Hour Advisory Memorandum,* 2006-2, at 3; App. 272-75. This is because "independent *de minimis* determinations of each task would rarely result in findings of compensable time — work can always be subdivided into small enough tasks to be considered *de minimis." Reich v. IBP, Inc.,* 1996 WL 137817, at \* 6. Here, the size of the plaintiffs' aggregate

26

claim, which involves **daily** donning and doffing activities over a seven year period for over 600 plaintiffs, cannot be considered *de minimis* under any meaning of the word.[14]

Finally, the time plaintiffs spend donning and doffing cannot be deemed *de minimis* because these activities occur regularly each work day. The *de minimis* rule does not apply where the activities at issue are regular, recurring events that employees perform each and every day. *See Kosakow,* 274 F.3d at 719 (no *de minimis* defense where employee needed to arrive 15 minutes early each day). Thus, Tyson's *de minimis* defense fails on this ground as well.

### E.    Defendants Do Not Provide Plaintiffs a Bona Fide Meal Period

To constitute a bona fide meal period, "the employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily, thirty minutes or more is long enough for a bona fide meal period . . . ." 29 C.F.R. § 785.19(a). An employee is not relieved of duty "if he is required to perform any duties, whether active or inactive, while eating." *Id.* The Sixth Circuit follows the 'predominant beneficiary' test, wherein a meal period is not bona fide if the employer is the predominant beneficiary of the meal period. See *Hill v. United States*, 751 F.2d 810, 814 (6th Cir. 1984), *cert. denied*, 474 U.S. 817 (1985).[15]

The DOL has stated in no uncertain terms that "the meal period may not include any time performing 'work,' and that time spent donning and doffing of personal protective equipment, clothing or gear before or after the meal period is compensable." *W & H Op. Letter*, January 15, 2001; App. 270-71. Further, meal periods where employees are only relieved for 20 minutes or

---

[14] Plaintiffs spend on average, from 45 minutes to over an hour each shift engaged in pre and post shift duties. Facts ¶¶ 130, 156. By any measure, this substantial amount of time (and corresponding amount of denied overtime pay) cannot be considered *de minimis*.

[15] Plaintiffs' meal period claim is factually distinguishable from that presented in *Hill,* 751 F.2d 810, and other similar "on call" meal period cases where workers sought compensation for meal periods where they were called away from their meals to perform work-related duties. Here, plaintiffs are prevented from using the entire uncompensated 30 minutes for their own enjoyment, because they are required to be on the production floor performing production duties and/or washing their hands, using the restroom, and donning and doffing their equipment during a portion of the 30 minutes of uncompensated time.

less are compensable breaks, not meal periods, under the FLSA. See *Alvarez v. IBP, Inc.*, 2001 U.S. Dist. LEXIS 25344, 41-42 (E.D. Wash. 2001) ("29 C.F.R. § 785.18 provides that no 'special conditions' would permit an unpaid meal break of less than 20 minutes"); 29 C.F.R. § 785.18 ("Rest periods of short duration, running from 4 minutes to about 20 minutes . . . . must be counted as hours worked.").

The record reveals that plaintiffs perform substantial duties during the meal period for Tyson's benefit. Meal periods at Goodlettsville Plant are scheduled for the same 30 minute time period every day for each production floor on each shift. Facts ¶¶ 161-163. To eat their meals, plaintiffs must leave the production floor. Facts ¶ 171. Even though defendants have the capability to record the amount of time plaintiffs actually spend off the production floor during the meal period, i.e., via time clocks located on the production floor, defendants automatically deduct 30 minutes of pay from each plaintiff's paycheck. Facts ¶¶ 11, 15, 158-159.

Prior to leaving and upon returning to the production floor during a meal period, defendants require plaintiffs to perform production work, doff and don equipment, wash equipment, wash their hands and wait for the first piece of meat to arrive at their station. Facts ¶¶ 163-169, 175-180. Defendants are aware that plaintiffs perform these duties during the meal period, yet plaintiffs are not compensated for any of these activities. *Id.*; Facts ¶ 158-159, 170. These activities are performed for Tyson's benefit. *Id.*, Facts ¶ 179; see also sections B and C, above. In addition, plaintiffs routinely spend over 10 minutes of their 30 minute uncompensated meal period performing these activities. Facts ¶¶ 181-182. These activities are compensable. See *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003) (donning, doffing, waiting and walking constitute compensable work activities during the 30 minute meal period), *aff'd on other grounds*, 546 U.S. 21 (2005); *Chavez v. IBP, Inc*. 2005 U.S. Dist. LEXIS 29714, 42-43 (E.D.

Wash. May 16, 2005) (finding that "meal break donning and doffing is compensable work under 29 C.F.R. § 785.19(a)").

Defendants benefit from the remaining uncompensated 20 minutes of the meal period as workers are encouraged to use the restroom only during designated breaks (including the meal period) and because for efficiency purposes, workers need a break after engaging in monotonous, repetitious, tedious and tiring tasks in a cold environment. [16]  Facts ¶¶ 47, 172-174, 201.  *See Chavez v. IBP, Inc.*, 2005 U.S. Dist. LEXIS 29714 (E.D. Wash. May 16, 2005) (where Tyson encouraged employees to use restroom during meal period, such "restroom usage is done at the behest of Tyson, for Tyson's benefit")[17]; *Chavez v. IBP, Inc.*, 2004 U.S. Dist. LEXIS 28837 (E.D. Wash. Aug. 18, 2004) (denying IBP's motion for summary judgment on meal period claim where IBP expected workers to use restroom during meal break and before and after production); *Mitchell v. Turner*, 286 F.2d 104, 105 (5th Cir. 1960) (one factor in determining compensability of break is whether the work is "monotonous, repetitious, tedious and tiring"); *Mitchell v. Greinetz*, 235 F.2d 621, 622-25 (10th Cir. 1956) (breaks compensable because of benefits to the employer – particularly the increased efficiency of the employees who engage in "monotonous and tiring" hand loom operation); *Brock v. Claridge Hotel & Casino*, 664 F. Supp. 899, 907-08 (D.N.J. 1986) (mandatory breaks primarily benefited the employer where primary purposes was to maintain worker productivity), *remanded on other grounds*, 846 F.2d 180 (3d Cir.), *cert. denied*, 488 U.S. 925 (1988).

For the reasons set forth above, plaintiffs do not receive a bona fide meal period and thus are entitled to be paid for the entire 30 minute meal period.

---

[16] Plaintiffs are prohibited from wearing their frock in the restroom.  Facts ¶ 30.  Thus, in order to use the restroom, plaintiffs must doff their frock and other equipment worn over the frock.  *Id.*
[17] See also *id.* ("The OSHA Standard Interpretation suggests that cold temperatures may increase the frequency of restroom usage").

**F.**     **Defendants are not Entitled to the Good Faith Defense**
                      **Provided by Section 259 of the Portal Act**

As this Court previously explained in its ruling denying defendants' motion for summary judgment, defendants are obligated to establish the affirmative defense of good faith under 29 U.S.C. § 259(a) by showing "that it acted: (1) in good faith, (2) in conformity with, and (3) in reliance on the specified agency writing, practice or policy." (Docket No. 178, p. 30).[18] In their unsuccessful motion for summary judgment, defendants attempted to prove their good faith defense by claiming to have relied on an alleged DOL enforcement policy as revealed by DOL's litigation positions in the *Reich* and *Herman* cases. See Docket No. 67 at 22.[19] In its decision, this Court specifically concluded, *as a matter of law,* that, "the conduct the defendants cite as an 'enforcement policy' is not sufficient to establish one." (Docket No. 178, p. 32). Because defendants failed to establish that DOL had an enforcement policy that alleviated defendants from their obligation to pay all of their employees for all of their donning, doffing, sanitizing and attendant walking and waiting time prior to and after their shifts, they are not entitled to the Section 259(a) good faith defense.

Specifically, this Court held that in attempting to establish reliance on an 'enforcement policy,' the defendants' reliance on DOL's attorneys' positions in the course of litigation was "unpersuasive." (Docket No. 178, p. 32). This Court concluded:

> Not only were the DOL's statements made in the course of the *Reich* and
> *Herman* litigations not issued by the Administrator of the Wage and Hour Division, but
> they were made to serve a very different purpose than an 'enforcement policy' as
> illustrated by the above-cited regulations and authority. For these reasons, ***it is highly***

---

[18] It is defendants' burden to demonstrate their good faith defense. See *Alvarez v. IBP, Inc.*, 339 F.3d 894, 907 (9th Cir. 2003) ("The employer bears the burden of proof to establish [the §259(a)] exception"); *Bouchard v. Regional Governing Bd. of Region V Mental Retardation Services*, 939 F.2d 1323, 1335 (8th Cir. 1991)(same).

[19] Defendants made this argument in their brief filed on June 9, 2003. (See Docket No. 67). However, defendants were aware as of March 28, 2000, that DOL had explicitly rejected defendants' reliance on this argument. Facts ¶ 196 (DOL brief opposing Tyson's reliance on dismissal of Herman action and letter from the Secretary dated, July 16,1999). Amazingly, defendants were aware of DOL's rejection of defendants' argument one year before the Goodlettsville plant opened in April 2001. See Facts ¶ 198.

> *unlikely* that the alleged "negotiated settlement" and the "consistent position" subsequently taken by the DOL could serve as an "enforcement policy" for purposes of the good faith defense.

(Docket No. 178 p. 32)(emphasis supplied)

Defendants had the burden to prove their good faith defense. Defendants woefully failed to meet their burden. Because this Court has already concluded that defendant's arguments related to this defense are "unpersuasive" and that it "is highly unlikely" that the alleged "negotiated settlement" and the "consistent position" subsequently taken by the DOL constitute an enforcement policy, plaintiffs are entitled to summary judgment on defendants' good faith defense. *See Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999) (if the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmoving party has the burden, the moving party is entitled to summary judgment as a matter of law).

### 1. DOL's Enforcement Policy Mandates Compensation for Donning, Doffing and Cleaning

DOL has never taken a position that a reasonable employer could conceivably believe condones Tyson's current recordkeeping and pay practices. Instead, DOL's "enforcement policy" has consistently required employers in the meat and poultry processing industry to record and pay for all hours of work. DOL has issued several opinion letters which require employers in the meatpacking industry to record and pay employees for actual hours of work, including time spent donning, doffing and cleaning protective equipment, clothing or gear. W & H Op. Letter, January 15, 2001; App. 270-71.[20] DOL has repeatedly reaffirmed its position with *these*

---

[20] See e.g., DOL Opinion Letters: March 9, 1949 (changing clothes and washing is compensable); May 8, 1950 (changing clothes compensable when part of principal activity); February 28, 1961 (where employee cannot perform duties without changing clothes on employer's premises, changing is compensable); January 25, 1962 (changing clothes in food processing plant compensable); March 14, 1967 (washing and changing clothes compensable if

31

defendants. For example, on May 9, 2002, DOL commenced a lawsuit against Tyson, alleging that Tyson violated the FLSA by failing to compensate employees for time spent donning, doffing and cleaning equipment. Fact ¶ 199. On August 1, 2005 DOL submitted an amicus brief to the Supreme Court in *IBP v. Alvarez* decrying defendants' continued failure to compensate its employees for all hours of work. See 2003 U.S. Briefs 1238 (2005), App. 276-87.

DOL again confirmed its long held views regarding compensation for all hours of work in the context of meat and poultry processing plants in its May 2006 Wage and Hour Advisory Memorandum discussed *supra*. (App. 272-75) Thus, in light of DOL's clear position mandating compensation for collecting, donning, doffing, cleaning, waiting and walking, defendants cannot possibly demonstrate that they objectively and subjectively acted in good faith, are in conformity with, and have relied upon this policy, where, as here, the record reveals that plaintiffs have ***not*** been compensated for the actual time they spend collecting, donning, doffing, cleaning, waiting and walking.

### 2. Defendants Continue to Willfully Ignore DOL's Enforcement Policy

Moreover, defendants have consistently flouted DOL's clear pronouncements condemning defendants' own particular system of failing to compensate employees for these activities at defendants' production plants throughout the nation. Even worse, defendants have failed to notify this plaintiffs and this Court regarding the numerous admonitions it has received from DOL over the years regarding the very pay policies that are at issue in this action. [21] For instance, DOL investigated IBP in 1986 and concluded that time spent donning, doffing and

---

required by employer, nature of job or statute); July 12, 1973 (clothes changing compensable where clothing was required for sanitary purposes and could not be worn outside) (App. 261-67).

[21] The Secretary of the Department of Labor recently filed a motion for summary judgment against defendants in *Chao v. Tyson Foods, Inc*., No. 2:02-cv-01174 (VEH) (N.D. Al.) for their failure to compensate poultry processing plant workers for donning, doffing and related activities. In support of her motion, the Secretary set forth many of DOL's communications with defendants regarding defendants' failure to compensate employees for hours of work at Tyson's various plants. Plaintiffs became aware of these communications only after DOL filed its brief on June 26, 2007.

cleaning "standard" personal protective gear was compensable. Facts ¶ 184.  In 1987, DOL investigated defendants' plant in Green Forest, Arkansas, and found that Tyson violated the FLSA by failing to compensate employees for time spent acquiring smocks, donning, doffing and cleaning equipment.  Fact ¶ 185.  Again, in January 1996, DOL investigated defendants' plant in Center, Texas and notified defendants that donning and doffing time was compensable and that such time could be recorded.  Fact ¶ 186.  A few months later, on April 15, 1996, DOL notified defendants' Complex Personnel Manager that workers paid time should commence when they don their hair net or "any type of garment which is necessary to perform duties" because these activities are an integral part of the principal activity and are indispensable to its performance. Fact ¶ 187.

One year later, in 1997, DOL notified defendants regarding potential wage and hour violations pertaining to its use of a pay start time and failure to pay for donning/doffing at two plants located in Jacksonville, Florida and Cumming, Georgia.  Fact ¶ 188.  On February 10, 1998, DOL issued a fact sheet based on a finding from a 1997 poultry processing investigation by the Wage and Hour Division, which included findings of FLSA violations where "[m]any in-plant workers were not being compensated for time spent on work-related tasks, such as: donning required clothing and equipment, disinfecting before going to their work stations, and cleaning clothing and equipment." Fact ¶ 189.  On April 30, 1999, the Department of Labor told IBP that production employees' actual work time must be recorded and compensated.  Fact ¶ 190.

In January 2000, two years prior to plaintiffs' commencement of this action, and over a year prior to defendants opening their Goodlettsville plant, DOL notified defendants of their unlawful failure to pay employees for donning and doffing equipment at defendants' plant in

Blountsville, Alabama. Fact ¶ 191. Moreover, on at least seven occasions between 2000 and 2001, DOL expressly notified defendants of their obligations to compensate workers for donning and doffing protective sanitary clothing and equipment. Facts ¶¶ 191-97.

Given DOL's clear and consistent pronouncements regarding compensation for obtaining, donning, doffing, cleaning, waiting and walking activities and DOL's repeated admonitions to ***these defendants***, defendants cannot show good faith. Notably, defendants' failure to produce evidence of its prior communications with DOL regarding compensation for donning and doffing, even though such evidence was responsive to plaintiffs' discovery requests and undoubtedly pertains to defendants' defenses, most aptly demonstrates *bad* faith and a willful effort to hide relevant evidence from this Court.

### G.    Plaintiffs Are Entitled To Liquidated Damages Pursuant to Section 216(b)

Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). If, and only if, an employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA, "the court may, in its sound discretion, award no liquidated damages" to a prevailing plaintiff. 29 U.S.C. § 260; *see also Elwell v. Univ. Hosp. Home Care Serv.,* 276 F.3d 832, 840 (6th Cir. 2002) (concluding that the district court abused its discretion in not awarding liquidated damages to the plaintiff because the defendant did not meet its burden of proving that it was acting in good faith when it instituted a compensation plan that violated the FLSA). The burden on the employer "is substantial and requires 'proof that [the

34

employer's] failure to obey the statute was *both* in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict.'" *Elwell,* 276 F.3d at 840 (quoting *McClanahan v. Mathews,* 440 F.2d 320, 322 (6th Cir. 1971) (emphasis in original)).  Moreover, even if an employer meets its burden, "a court nevertheless 'may award full liquidated damages equal to, and in addition to, the unpaid back wages.'" *Schneider v. City of Springfield,* 102 F. Supp. 2d 827, 840 (S.D. Ohio 1999) (quoting *McClanahan,* 440 F.2d at 323).

For the reasons set forth in section IV. C., *supra,* Tyson cannot possibly show either subjective good faith or objective reasonableness.  Accordingly, an award of liquidated damages is mandatory.

Date:  August 20, 2007                    Respectfully submitted,


                                          /s/Molly A. Elkin____
                                          Molly A. Elkin
                                          Lauren E. Schwartzreich
                                          WOODLEY & McGILLIVARY
                                          1125 15th Street, N.W., Suite 400
                                          Washington, DC 20005
                                          (202) 833-8855
                                          (202) 452-1090 (Facsimile)


                                          /s/Charles P. Yezbak, III
                                          2002 Richard Jones Road
                                          Suite B-200
                                          Nashville, TN 37215
                                          (615) 250-2000
                                          (615) 250-2020 (Facsimile)

35