## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

EMILY D. JORDAN, et al.,        )
on behalf of themselves and all others   )
similarly situated,           )
                      )
     **Plaintiffs,**         )
                      )
**v.**                    )     **Case No. 3:02-cv-1132**
                      )     **Judge Trauger**
**IBP, INC. and**           )
**TYSON FOODS, INC.,**     )
                      )
     **Defendants.**        )

## MEMORANDUM

Pending before the court is the motion for partial summary judgment with respect to liability filed by the plaintiffs (Docket No. 236), to which the defendants have responded (Docket No. 244), and the plaintiffs have replied (Docket No. 253).

Also pending before the court is the defendants' motion to decertify (Docket No. 234), to which the plaintiffs have responded (Docket No. 245). Asserting that the plaintiffs' response raised new arguments, the defendants combined their reply with a second motion to decertify a broader claim than that which they initially moved to decertify. (Docket Nos. 250, 251.) The plaintiffs have moved to strike this second motion and portions of the defendants' reply (Docket No. 255), and the defendants responded to the motion to strike (Docket No. 256).

1

## BACKGROUND

This case represents yet another chapter in a long history of litigations that span multiple fora, all of which involve one or both of the defendants here and the question of whether their compensation practices violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* These defendants, individually or collectively, have now been litigating this same issue for decades, reflecting what can only be described as a deeply-entrenched resistance to changing their compensation practices to comply with the requirements of FLSA. Most notably, beginning in 1988, the Department of Labor brought suit against IBP in the U.S. District Court for the District of Kansas (the "DoL Litigation"), which culminated in the issuance, in July 1996, of a company-wide permanent injunction requiring IBP to comply with the overtime and recordkeeping provisions of FLSA. *See Garcia v. Tyson Foods, Inc.*, 474 F. Supp. 2d 1240, 1242-43 (D. Kan. 2007) (discussing history of DoL Litigation). In an earlier ruling in this case denying the defendants' motion for summary judgment,[1] the court reviewed the history of the DoL Litigation in detail and considered the effect that the DoL Litigation and the injunction would have on this matter, holding, essentially, that the parties here are not barred from litigating the issue of compensability of certain activities under FLSA, although those issues also were addressed in the DoL Litigation. *See Jordan v. IBP, Inc.*, No. 3:02-1132, 2004 U.S. Dist. LEXIS 30490 (M.D. Tenn. Oct. 13, 2004).

---

[1]The defendants moved for summary judgment on June 9, 2003. (Docket No. 60.) That motion was denied with respect to certain claims on January 8, 2004 (Docket No. 131) and with respect to the remainder of the claims on October 12, 2004 (Docket No. 178). The court's consideration of the impact of the DoL Litigation appears in the October 12, 2004 memorandum. (Docket No. 178.)

2

The plaintiffs in this matter are hourly employees or former hourly employees of the defendants who work or worked at the defendants' beef and pork processing plant in Goodlettsville, Tennessee (the "Goodlettsville Plant"). On November 21, 2002, the plaintiffs filed this collective action on behalf of themselves and other similarly situated employees alleging that, since the time the defendants commenced operations at the Goodlettsville Plant in April 2001, hourly employees working on the production floor have been denied compensation in violation of FLSA. Specifically, the plaintiffs allege that they have been denied compensation for work performed before the official start of their shifts and work performed after the official clock-out time, in that they are required to don and doff certain clothing and gear during those periods, which activity also requires collecting gear, sanitizing gear, stowing gear, walking, and waiting. The plaintiffs additionally allege that they have been denied compensation for work performed during uncompensated meal periods, in that they are required to engage in production work during meal periods and to don and doff clothing and gear prior to and after eating. The plaintiffs seek a declaratory judgment that the defendants have willfully and wrongfully violated their statutory and legal obligations under FLSA, request a complete and accurate accounting of all compensation to which they might be entitled, and seek monetary damages in the form of back pay and other entitlements and liquidated damages equal to their unpaid compensation as provided for by FLSA.

This matter is before the court at this point on the plaintiffs' motion for summary judgment with respect to liability, in which the plaintiffs argue that summary judgment should be granted with respect to their claims that (1) the defendants failed to compensate them for time spent performing pre- and post-production donning and doffing and related activities; (2) the

3

defendants failed to provide them with a bona fide meal period; (3) the defendants are not entitled to a good faith defense to their claims; and (4) the defendants are not entitled to a good faith reduction in liquidated damages. Additionally, the defendants have moved to decertify certain of the plaintiffs' claims. Those motions, and the motion to strike filed by the plaintiffs and relating to the defendants' motion to decertify, are the subject of this memorandum.

## FACTS

The plaintiffs work at the Goodlettsville Plant in a variety of hourly positions, including that of Trimmer, Styler, Knifer, Trainer, Inspector, and Tray Transfer Employee. (Docket No. 1 ¶ 3.)

The defendants maintain time clocks on the production floor at the Goodlettsville Plant, and employees clock in and out every shift.[2] (Docket No. 244 App. ¶ 14.) However, the defendants use the clock-in time primarily for attendance purposes and not to determine when an employee begins working for compensation purposes. (Docket No. 244 App. ¶¶ 15-18.) Instead, employees are compensated, according to the defendants' "Alternative Time and Attendance System," from a pre-determined "Pay Start Time," which is a set time that corresponds to the time at which the defendants estimate that the first piece of meat will arrive at the employee's station on the production line, until the employee clocks out as he leaves the production floor at the end of the shift. (Docket No. 244 App. ¶¶ 7-8, 11).

All production floor employees at the Goodlettsville Plant are required to wear company-issued sanitary frocks while they are on the production floor and may be subject to discipline for

---

[2]The term "employees" shall be understood to refer specifically to production floor employees at the Goodlettsville Plant.

4

failing to do so.[3]  (Docket No. 244 App. ¶¶ 24, 30, 39.)  Because the frocks are required to maintain sanitary conditions on the production floor, employees are prohibited from—and may be subject to discipline for—wearing the frocks outside the plant, in restrooms, or in the cafeteria.  (Docket No. 244 App. ¶¶ 30, 125.)  Employees are also prohibited from taking the frocks home.  (Docket No. 244 App. ¶ 38.)

Prior to the start of their shifts, employees report to the locker room at the Goodlettsville Plant, where they retrieve clean frocks from their assigned lockers and don those frocks.[4] (Docket No. 244 App. ¶ 32.)  Additionally, employees retrieve a set of standard gear—including hard hats, hair and beard nets, and ear protection—from their lockers and don that gear.  (Docket No. 244 App. ¶ 63.)  In addition to this standard gear, some employees are required to wear certain specialized gear based on their particular position on the production line.  For example, employees who use knives[5] must wear or use special cut-resistant gloves, belly guards, protective sleeves, forearm guards, scabbards, steels, meat hooks, and hook holders.[6]  (Docket No. 244 App. ¶¶ 71, 75, 82, 88, 97, 102, 110).  Prior to beginning work on the production line,

_____

[3]The parties dispute whether the frocks may be characterized as "specially designed." (Docket No. 244 App. ¶¶ 25, 27.)  It is undisputed, however, that the frocks have cuffed sleeves, collars, and snap closures, and that the sleeves are intended to prevent contact between employees' street clothing and the product.  (Docket No. 244 App. ¶¶ 26-27.)

[4]The defendants dispute that all employees don their frocks in the locker room, noting that some may don their frocks in the production hallway while walking to the production floor. (Docket No. 244 App. ¶ 34.)

[5]The parties dispute whether any employees, other than knife-users, are required to wear specialized gear.  The plaintiffs assert that certain other employees are required to wear plastic sleeves, rubber aprons, and skinner gloves, but the defendants argue that such gear is not required of any employees other than knife-users.  (Docket No. 244 App. ¶¶ 66, 122.)

[6]Some knife users also are required to use safety glasses (Docket No. 244 App. ¶ 93) and steel sanders (Docket No. 244 App. ¶¶ 105-09).

5

knife-users retrieve this gear from their lockers. (Docket No. 244 App. ¶¶ 73, 80, 87, 91, 99-100, 109, 114.) Employees may be disciplined for failing to wear any of the required standard or specialized gear on the production line. (Docket No. 244 App. ¶¶ 64, 123.)

After donning their frocks and standard gear and retrieving any specialized gear they are required to wear, all employees report to the production hallway, where they wash their hands, wait for supervisors to open the production floor doors, and walk through a sanitizing foot bath onto the production floor. (Docket No. 244 App. ¶ 129(f-h).) Employees obtain rubber or latex gloves, sanitize the gloves, and don the gloves over their frocks before beginning work on the production line.[7] (Docket No. 244 App. ¶¶ 55-60.) Knife users sanitize and don their specialized gear and retrieve and use a steel to straighten the edge of their knives before reporting to their work stations. (Docket No. 244 App. ¶¶ 116-17; 129(i-k; n)).

It is undisputed that this donning of frocks and gear, as well as the attendant collecting, sanitizing, walking, and waiting, occur before work on the production line begins and, thus, before each employee's Pay Start Time. (Docket No. 244 App. ¶¶ 20, 37, 56-60, 63, 121, 129.) This time is therefore uncompensated, save for four minutes per day for which knife-users are compensated pursuant to the DoL Litigation. (Docket No. 244 App. ¶¶ 19, 20, 37, 129; Docket No. 252 ¶ 1.) The plaintiffs estimate that these pre-production activities take approximately twenty to thirty minutes per day to complete. (Docket No. 244 App. ¶ 130.) The defendants, by contrast, assert that these pre-production activities take no longer than seven minutes. (Docket No. 244 App. ¶ 130.)

---

[7]Employees who do not handle product or touch surfaces that come into contact with product are not required to wear rubber or latex gloves. (Docket No. 252 ¶ 13.)

6

At the end of their shifts, employees doff and sanitize any specialized gear they are required to wear and, after leaving the production floor, doff their standard gear and their frocks.[8]  (Docket No. 244 App. ¶¶ 140-44.)  Employees then report to the frock room to exchange their soiled frocks for clean frocks, and then stow their clean frocks in their lockers.[9]  (Docket No. 244 App. ¶¶ 40, 145-51.)  It is undisputed that the doffing of the frocks and gear and other activities occur after employees clock out.  (Docket No. 244 App. ¶¶ 21, 136, 141, 143, 153.)  The plaintiffs estimate that these post-production activities take from fifteen to forty minutes to complete; the defendants assert that they can be completed in less than five minutes.  (Docket No. 244 App. ¶ 156.)

With regard to meal periods, employees do not clock out for their meals during the course of a shift at the Goodlettsville Plant.  (Docket No. App. 244 ¶ 159.)  Instead, under the Alternative Time and Attendance System, for every five and one-half hours worked by an employee, that worker is docked thirty minutes for an unpaid meal period.  (Docket No. 244 App. ¶ 158.)  These breaks occur at scheduled times during each shift.  (Docket No. 244 ¶¶ 161, 164.)  Although the parties dispute when the thirty-minute period begins,[10] it is undisputed that,

---

[8]The parties dispute whether employees wash prior to or following clock-out.  (Docket No. 244 App. ¶¶ 137-38.)

[9]The parties dispute whether employees must wait in lines to exchange their soiled frocks at the frock room.  (Docket No. 244 App. ¶ 155.)  Additionally, the defendants note that employees are permitted to take certain gear home if they choose.  (Docket No. 244 App. ¶¶ 145, 152-53.)  However, most of the gear must be sanitized and worn over the required frocks, which are stored in employees' lockers, may not be taken home, and must be donned inside the Goodlettsville Plant.  (Docket No. 244 App. ¶¶ 124-28.)

[10]According to the plaintiffs, the thirty-minute meal period begins at the scheduled time, regardless of whether there is still meat on the production line, and thus some plaintiffs are not able to leave the line until after the clock begins to run on the thirty-minute period, requiring them to perform production work, in addition to doffing and donning of the frock and gear, during the meal period.  (Docket No. 244 ¶¶ 164-65.)  By contrast, the defendants claim that the

7

during the course of any thirty-minute meal period, employees must doff their frocks, standard gear, and any specialized gear they are required to wear (Docket No. 244 App. ¶¶ 175-78) and then don their frock and gear before returning to the production line so that they are completely ready to work on the production line when the thirty-minute period ends (Docket No. 244 App. ¶¶ 166, 168, 180).[11]  According to the plaintiffs, these activities take ten to eighteen minutes; the defendants claim that these activities may be completed in less than four minutes.  (Docket No. 244 App. ¶ 181.)

## ANALYSIS

This memorandum will first address the plaintiffs' summary judgment motion with respect to their pre- and post-production activities claims.  It will then consider all of the issues relating to the plaintiffs' meal period claim, including the defendants' motion to decertify that claim and the plaintiffs' related motion to strike, as well as the plaintiffs' summary judgment motion with respect to that claim.  Finally, it will address the plaintiffs' summary judgment motion with respect to the defendants' good faith defenses to liability and to liquidated damages.

---

thirty-minute period begins individually for each employee as the last piece of meat passes his or her station, and thus the clock begins to run as each employee leaves the line.  (Docket No. 244 App. ¶¶ 164-65.)

[11]The plaintiffs also assert that they are encouraged use the restroom during the meal period to minimize disruption of production, as an employee who must use the restroom during a shift must leave the line, doff his or her gear and frock before using the restroom, and then don his or her gear and frock before returning to the line.  (Docket No. 244 App. ¶¶ 172-73.) Moreover, the plaintiffs note that several employees have complained that they were not permitted to use the restroom during a shift.  (Docket No. 244 App. ¶ 172.)  The defendants claim that, although the policy is intended to encourage the use of the restrooms during the meal period, employees are not denied the opportunity to use the restroom during a shift if necessary, and the complaints the plaintiff references were mischaracterized.  (Docket No. 244 App. ¶ 172.)

## I.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which he or she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v.*

9

*Racetrac*

*Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the

evidence offered by the nonmoving party is "merely colorable," or "not significantly probative,"

or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary

judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the

parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v.*

*White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

## II.     FLSA Overview

Congress enacted FLSA to establish standards for ensuring a "minimum standard of

living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a).

To that end, the statute mandates the minimum hourly pay that an employee may receive and the

maximum number of hours in a week that an employee may work. 29 U.S.C. §§ 206-07. If an

employee works more than forty hours per week, the statute requires the employer to provide

overtime compensation, stating:

> [N]o employer shall employ any of his employees who in any workweek is
> engaged in commerce or the production of goods for commerce . . . for a
> workweek longer than forty hours unless such employee receives compensation
> for his employment in excess of the hours above specified at a rate not less than
> one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Though it requires overtime compensation for work performed, FLSA does not specify

what activities constitute work. *See Tenn. Coal, Iron, & R.R. Co. v. Muscoda Local No. 123*,

321 U.S. 590, 597 (1944) ("In determining whether [a certain activity] constitutes compensable

work or employment within the meaning of the [FLSA], we are not guided by any precise

statutory definition of work or employment."). The Supreme Court stated in *Tennessee Coal*

10

that, "[t]o hold that an employer may validly compensate his employees for only a fraction of the time consumed in actual labor would be inconsistent with the very purpose and structure of [FLSA]." *Id.* at 598. The Court concluded that FLSA's references to "work" and "employment" should be interpreted "as those words are commonly used—as meaning physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Id.*; *Chao v. Akron Insulation & Supply, Inc.*, 184 Fed. Appx. 508, 510 (6th Cir. 2006) (citing *Tenn. Coal*, 321 U.S. at 598). Holding that the time spent by mine workers traveling underground constitutes compensable work, the Court noted that "[n]othing in [FLSA] or in reason demands that every moment of an employee's time devoted to the service of his employer shall be directly production." *Tenn. Coal*, 321 U.S. at 599.

Shortly after deciding *Tennessee Coal*, the Supreme Court clarified that an activity need not require exertion to be considered work compensable under FLSA, noting that an employee may be hired "to do nothing, or to do nothing but wait for something to happen." *Armour & Co. v. Wantock*, 323 U.S. 126, 132-33 (1944); *see Chao*, 184 Fed. Appx. at 511 (holding that "wait time" is compensable under FLSA if it is "for the employer's benefit and at its behest"). Subsequently, the Court ruled that FLSA requires compensation for "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace," including "time spent in walking to work on the employer's premises, after the time clocks were punched." *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 690-92 (1946), *superseded by statute*, Portal-to-Portal Act, 61 Stat. 86-87, *as recognized in Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 649 (2d Cir. 1995).

Congress enacted the Portal-to-Portal Act several years later to amend FLSA and further address what activities constitute work under FLSA. The statute effectively superseded the holding in *Mt. Clemens Pottery* that time spent walking constitutes work and provided that FLSA does not require an employer to compensate employees for "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which [an] employee is employed to perform." 29 U.S.C. § 154(a)(1). The statute also specified that "activities which are preliminary to or postliminary to [an employee's] principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities" are not compensable. 29 U.S.C. § 154(a)(2). The Supreme Court has since noted, however, that, other than excluding walking and preliminary and postliminary activities from FLSA coverage, the statute "does not purport to change [the Supreme Court's] earlier descriptions of the terms 'work' and 'workweek,' or to define the term 'workday.'" *IBP, Inc. v. Alvarez*, 546 U.S. 21, 28 (2005).

Shortly after the Portal-to-Portal Act was enacted, the Department of Labor issued interpretations[12] defining a workday as "the period between the commencement and completion

_____

[12]The purpose of the interpretations was "to indicate the construction of the law which the [Department of Labor] believes to be correct . . . [and to] provide a practical guide to employers and employees." 29 C.F.R. § 790.1(c). Although the interpretations are not promulgated as regulations, there are entitled to deference to the extent that they are persuasive. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) ("[R]ulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."); *see also Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1342-43 (11th Cir. 2007) (noting that "[t]hese statements are not promulgated regulations

12

on the same workday of an employee's principal activity or activities" and providing that "to the extent that activities engaged in by an employee occur after the employee commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday," those activities are not excluded from FLSA coverage by the Portal-to-Portal Act.  29 C.F.R. § 790.6(a-b).  Thus, walking and preliminary and postliminary activities are compensable under FLSA, in spite of the Portal-to-Portal Act, so long as they occur after the workday has begun and before it has ended.  This is known as the "continuous workday rule," which has remained in effect since 1947, *Alvarez*, 546 U.S. at 28-29, and the application of which the defendants do not dispute (Docket No. 244 at 5).

Although the Portal-to-Portal Act limits FLSA coverage of preliminary and postliminary activities, the Supreme Court has held that such activities nevertheless are compensable "if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed."  *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956); *see also* 29 C.F.R. § 790.8 (b-c) (noting that the term "principal activity" includes activities that are an integral part of a principal activity and are indispensable to its performance).  In *Steiner*, the Court distinguished "changing clothes and showering under normal conditions," which are not compensable under FLSA, 350 U.S. at 249, from the donning and doffing of specialized protective gear that is integral and indispensable to an employee's principal activity and therefore compensable, *id.* at 256.

---

because Congress did not authorize the Secretary of Labor to issue regulations regarding the scope of the exemptions [of the Portal-to-Portal Act]" but nevertheless finding that the statements "are persuasive and should be given due deference.").

Recently, in *Alvarez*, the Supreme Court revisited its previous rulings on the compensability of various activities under FLSA and the Portal-to-Portal Act. In that case, the Court consolidated the appeals of two defendants (including that of IBP, Inc., a defendant here) and addressed the question of "whether postdonning and predoffing walking time" is compensable under FLSA or is excluded from FLSA coverage by the Portal-to-Portal Act. *Alvarez*, 546 U.S. at 30. A detailed consideration of the Court's ruling is instructive.[13]

The facts in *Alvarez* were markedly similar to those here. In that case, employees were required to wear a complement of protective gear that they donned and doffed in a company locker room prior to walking to the production floor for the start of productive work. *Id.* at 30. Although IBP compensated employees for four minutes of time to change clothes, it did not compensate them for the time spent donning and doffing gear or walking between the locker room and the production floor. *Id.* at 31. The employees sued, claiming that they were entitled to additional compensation for these activities.

The Court first noted that IBP had not challenged the lower court's previous ruling that, under *Steiner*, the donning and doffing of "unique" protective gear are not excluded from FLSA coverage by the Portal-to-Portal Act. *Id.* at 32. Instead, IBP argued, in effect, that those activities did not trigger the start of the workday under the continuous workday rule, despite the fact that such donning and doffing are compensable, and, therefore, that time spent walking

---

[13]In addition to the Supreme Court's ruling in *Alvarez*, the plaintiffs rely on a Wage and Hour Advisory Memorandum issued by the Department of Labor interpreting that decision. Reliance on the memorandum here is unnecessary, however, as the import of *Alvarez* is clear and the interpretation of *Alvarez* embodied in the memorandum essentially is consistent with this court's interpretation of that decision.

14

between the locker room and the production floor was not compensable under the Portal-to-Portal Act. *See id.* at 33.

Relying on the text of the relevant statutes, regulations, and its own precedent, the Court found that, if a preliminary activity is integral and indispensable to an employee's principal activity such that it is not excluded from FLSA coverage by the Portal-to-Portal Act, then that activity is itself a principal activity.[14] *Id.* at 33, 37. Moreover, the Court held that a preliminary activity that is sufficiently integral and indispensable as to be covered under FLSA also constitutes a principal activity triggering the start of the workday under the continuous workday rule. *See id.* at 33. Thus, there is no distinction between a principal activity for the purposes of determining whether an activity is compensable and for the purposes of determining the start of the workday.[15] Once an employee engages in a principal activity—or in an activity that is integral and indispensable to a principal activity—the workday has begun and, under the continuous workday rule, that activity and any subsequent activities in which the employee engages prior to the end of the workday are compensable, even if those activities would otherwise be excluded from coverage by the Portal-to-Portal Act.[16] In applying its holding to the

_____

[14]The Court in *Alvarez* did not address the question of whether the donning and doffing of particular types of gear were compensable, instead premising its holding on the fact that the lower court had already made that determination. *Id.* at 30 ("The principal question presented by these consolidated cases—both of which involve required protective gear that the courts below found integral and indispensable to the employees' work—is whether postdonning and predoffing walking time is specifically excluded by [the Portal-to-Portal Act].").

[15]The Court rejected what it characterized as the employer's attempt to "create a third category of activities—those that are 'integral and indispensable' to a 'principal activity' and thus not excluded from coverage by [the Portal-to-Portal Act], but that are not themselves 'principal activities.'" *Id.* at 33.

[16]As a parallel, the end of the workday is marked by the employee's performance of the last principal activity, or the last activity integral and indispensable to a principal activity. *See id.* at 28.

15

facts at hand, the Court in *Alvarez* affirmed the Ninth Circuit's ruling that walking between the locker room and the production floor was compensable, as that activity occurred within the workday, which started and concluded, respectively, with the donning and doffing of protective gear. *Id.* at 37 ("[D]uring a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of [the Portal-to-Portal Act], and as a result is covered by the FLSA.").

## III.    Pre- and Post-Production Activities Claims

First, the court turns to the plaintiffs' motion for summary judgment with respect to their claims regarding compensation for pre- and post-production activities.

The plaintiffs claim that all of their pre- and post-production activities—donning and doffing their frocks and gear and the attendant collecting, sanitizing, stowing, walking, and waiting—constitute work compensable under FLSA.[17]  Additionally, the plaintiffs do not dispute that these activities are preliminary and postliminary activities, but assert that the activities are integral and indispensable to their principal activities and thus are not excluded from FLSA coverage by the Portal-to-Portal Act.  Finally, the plaintiffs argue that the time involved in these pre- and post-production activities is not *de minimis*.

Whether a particular activity constitutes work under FLSA is a question of law.  *Farmer v. Ottawa County*, No. 98-2321 / 99-1047, 2000 U.S. App. LEXIS 7224, at *9 (6th Cir. Apr. 13,

---

[17]More specifically, the plaintiffs argue that the act of retrieving their frocks from their lockers begins the workday and the act of stowing clean frocks in their lockers marks the end of the workday.  Thus, they argue that they are entitled to compensation for those activities and for all of the time between those two activities under the continuous workday rule, regardless of the compensability of any of the intervening activities.

16

2000) (citing *Birdwell v. City of Gadsden*, 970 F.2d 802, 807 (11th Cir. 1992)). The nature of the plaintiffs' duties, however, is a question of fact. *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004) ("Whether an activity is excluded from hours worked under the FLSA, as amended by the Portal-to-Portal Act, is a mixed question of law and fact. The nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law."); *Birdwell*, 970 F.2d at 808 ("Certain sets of facts, if found by a fact finder, will give rise to liability under the FLSA while other sets of facts will not. It is for the court to determine if a set of facts gives rise to liability; it is for the jury to determine if those facts exist."). The defendants assert that there are significant factual disputes in this case—including what clothing and gear is required, the extent to which the defendants exercise control over clothes-changing activities, and the extent to which the required clothing and gear benefits the defendants or the plaintiffs—that preclude summary judgment with regard to the questions of whether the plaintiffs' activities constitute work, whether those activities are integral and indispensable to the plaintiffs' principal activities, and whether the time spent on those activities is *de minimis*.

A. Exertion

The defendants first argue that the pre- and post-production activities at issue here do not constitute work, as they do not require exertion.

This argument fails, however, as the Supreme Court made clear in *Armour* that exertion is not required for an activity to constitute work. *See Armour*, 323 U.S. at 132-33, *cited in Alvarez*, 546 U.S. at 25. The defendants claim that *Armour* is limited to so-called "engaged to wait" cases; however, nothing in the case suggests that its holding is so limited. Additionally, the Supreme Court's recent discussion of *Armour* indicates that the Court regards *Armour* as

17

applying not only to "engaged to wait" cases. *See Alvarez*, 546 U.S. at 25. The Court in *Alvarez*

noted that, though the Portal-to-Portal Act created two specific exceptions to FLSA coverage,

that enactment did not otherwise alter the Court's previous descriptions of the term "work,"

lending further proof to the conclusion that *Armour* remains good law. *Id.* at 28.

The defendants rely on the Tenth Circuit's opinion in *Reich v. IBP, Inc.*, 38 F.3d 1123

(10th Cir. 1994), which was issued in the course of the DoL Litigation, to support their argument

that exertion is required for an activity to be compensable under FLSA.[18] The Court in *Reich*

addressed a factual situation essentially identical to that here and held that the donning and

doffing of standard gear was not compensable under FLSA as it did not constitute work, since

that activity "takes all of a few seconds and requires little or no concentration," and thus does not

satisfy what the Court called the exertion "prong" of the *Tennessee Coal* test. *Id.* at 1125-26.

The Court noted in passing that the donning and doffing of standard gear "could also be said [to

be] *de minimis* as a matter of law," but that "it is more properly considered not work at all." *Id.*

at 1126 n.1.

The persuasive effect of the *Reich* decision is extremely limited, however, as it was

issued before the Supreme Court's decision in *Alvarez*, which clarified that exertion is not

required for an activity to be compensable under FLSA.[19] The defendants argue that *Alvarez*

---

[18]The defendants also rely heavily on *Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556 (E.D. Tex. 2001) and *Pressley v. Sanderson Farms, Inc.*, No. Civ. A. H-00-420, 2001 WL 850017 (S.D. Tex. Apr. 23, 2001), two district court cases that followed *Reich*. However, like *Reich*, those cases preceded the Supreme Court's ruling in *Alvarez*, and their rationales are severely undermined by that decision.

[19]The defendants claim that the Tenth Circuit's ruling in *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274 (10th Cir. 2006), suggests that *Reich* remains good law even following *Alvarez*. *Smith*, however, merely stands for the proposition that traveling to one's job site, even if employees travel together and occasionally discuss work on the trip, is not compensable under the Portal-to-Portal Act, if that traveling does not occur within the continuous workday. *Id.* at

18

does not have any impact on the validity of *Reich* because, they claim, *Alvarez* only addressed the compensability of walking, and not the compensability of donning and doffing. But this is too limited a view of *Alvarez*. The fact is that *Alvarez* endorsed the view first expressed in *Armour*—that exertion is not required for an activity to be compensable, whether the activity in question is walking, waiting, or any other activity requiring little or no exertion. Moreover, since *Alvarez*, at least one district court in the Tenth Circuit has declined to follow *Reich* in light of *Alvarez*. *See Garcia*, 474 F. Supp. 2d. at 1246 ("The court is convinced that the Circuit, if given the opportunity to revisit the issues in *Reich*, would approach its analysis of the pertinent issues differently in light of *Alvarez* . . . .").

More persuasive than the *Reich* decision are the Ninth Circuit's ruling in *Alvarez* (which was later affirmed by the Supreme Court), that Court's ruling in *Ballaris*, and the Third Circuit's recent ruling in *De Asencio*, which followed in the wake of the Supreme Court's ruling in *Alvarez*. First, in *Alvarez v. IBP, Inc.*, the Ninth Circuit noted that work includes "even non-exertional acts" and held that the donning and doffing of both standard and specialized protective gear worn by employees at a meat processing plant constitutes work, as the gear was required by the employer's rules and was worn for the benefit of the employer.[20] 339 F.3d 894, 902-03 (9th

---

1288. If anything, *Smith*'s focus on the continuous workday supports the conclusion that *Reich*'s application is limited in light of *Alvarez*. *Garcia v. Tyson Foods, Inc.*, 474 F. Supp. 2d 1240, 1246-47 (D. Kan. 2007) (noting that the *Smith* Court's analysis is "a markedly different one than the *Reich* analysis, is in accord with *Alvarez* and further suggests that the Circuit, if revisiting *Reich*, would approach that case differently"); *see also De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 371-72 (3d Cir. 2007) (citing *Garcia*, 474 F. Supp. 2d at 1247).

[20]The Court ultimately concluded, however, that though the donning and doffing of standard gear constitutes work, it is not compensable, as the amount of time required to perform those tasks is *de minimis* as a matter of law. *Id.* at 903-04 ("[D]onning and doffing of all protective gear is integral and indispensable to 'the principal activities for which [the plaintiffs] are employed,' and generally compensable. However, the specific tasks of donning and doffing of non-unique protective gear such as hardhats and safety goggles is noncompensable as *de*

Cir. 2003). The Court then concluded that, under the continuous workday rule, any activities occurring after the first principal activity of the day and before the last principal activity of the day are compensable, including walking.[21] *Id.* at 906-07.

The Ninth Circuit had another opportunity to address this issue in *Ballaris*. There, the Court found that the district court erred in holding that changing clothes did not constitute work because it did not require exertion. *Ballaris*, 370 F.3d at 911-12. The Court noted that its ruling in *Alvarez* stood for the proposition that work includes "nonexertional acts" and found that donning and doffing a uniform constituted work, in light of the facts that the employer required employees to change into uniforms at the plant and that the uniforms benefitted the employer by reducing the risk of contamination. *Id.* at 911. The Court thus reversed the district court's ruling and remanded the case for a determination of whether the time spent donning and doffing was *de minimis*. *Id.* at 912.

Most recently, the Third Circuit addressed this issue in the case of *De Asencio*, which involved the donning and doffing of gear at a meat processing plant operated by Tyson, one of the defendants here. The Court began by reviewing the Supreme Court's opinion in *Alvarez*, stating that "*Alvarez* not only reiterated the broad definition of work, but its treatment of walking and waiting time under the Portal-to-Portal Act necessarily precludes the consideration of cumbersomeness or difficulty on the question of whether activities are 'work.'" *De Asencio*, 500 F.3d at 370-71. The Court followed *Ballaris* in rejecting the Tenth Circuit's rationale in *Reich*, concluding that the question of whether donning and doffing gear constitutes work does not

_____

*minimis*.") (citations omitted).

[21]It was this aspect of the ruling that was appealed to, and affirmed by, the Supreme Court. *Alvarez*, 546 U.S. at 525. The Supreme Court's decision is discussed in detail in Section II *supra*.

entail any consideration of "whether the gear was cumbersome, heavy, or required concentration to don and doff," but rather simply consideration of whether the activity was "controlled or required by the employer and pursued for the benefit of the employer." *Id.* at 373.

The collective wisdom of these circuit courts makes crystal clear that exertion is not required for an activity to constitute work under FLSA and the Portal-to-Portal Act.

B.      *Required by Employer*

As exertion is not required for an activity to constitute compensable work under FLSA, the question of whether the plaintiffs' pre- and post-production activities constitute work turns on whether those activities are required by the employer, whether they are undertaken primarily for the employer's benefit, and whether those activities, which are preliminary and postliminary, are nevertheless integral and indispensable to the plaintiffs' principal activities such that they are not excluded from FLSA coverage by the Portal-to-Portal Act. *See Brock v. City of Cincinnati*, 236 F.3d 793, 801 (6th Cir. 2001); *De Asencio*, 500 F.3d at 371 ("Activity must be 'work' to qualify for coverage under the FLSA, and that 'work,' if preliminary or postliminary, will still be compensable under the Portal-to-Portal Act if it is 'integral and indispensable' to the principal activity.").

The plaintiffs correctly assert that, under the continuous workday rule, they are entitled to compensation from the first principal activity in which they engage during a shift until the last principal activity in which they engage. *Alvarez*, 546 U.S. at 525. They assert that the first principal activity during each shift is the removal of clean frocks from their lockers and the donning of those frocks, and that the last principal activity is the stowing of clean frocks in their lockers after they have doffed the soiled frocks and exchanged the soiled frocks for clean frocks. As all of the plaintiffs engage in these activities, and as the compensability of any intervening

21

activities—including the donning and doffing of standard and specialized gear and the attendant collecting, sanitizing, walking and waiting—is irrelevant under the continuous workday rule if the plaintiffs prevail in their argument, the court will first address the compensability of those activities that the plaintiffs assert are the first and last principal activities in which they engage during a shift, which may render an analysis of the compensability of the intervening activities unnecessary and render some factual disputes regarding those intervening activities immaterial.

With respect to the question of whether the activities are required by the employer, the undisputed fact is that the defendants require the plaintiffs to wear frocks that are owned, maintained, cleaned, and provided to the plaintiffs by the defendants. Whether those frocks are "specially designed" is irrelevant; the fact of the matter is that the plaintiffs are not permitted to wear frocks of their own choosing or to take the provided frocks home with them. They may not launder the frocks themselves and must store the frocks in the locker room at the Goodlettsville Plant. Prior to their shifts, they must don the frocks at the plant, and they must doff the frocks and exchange the soiled frocks for clean frocks, which are stowed in their lockers, before leaving the plant at the end of their shifts. Finally, they may be subject to discipline if they do not wear the frocks on the production floor. As the Ninth Circuit noted, such facts "weigh heavily in favor of a determination that the activity is *not* excluded by the Portal-to-Portal Act." *Ballaris*, 370 F.3d at 911 (citing facts that employees were required to wear frocks, were required to change at the plant, were disciplined for failing to wear the frocks on the production floor, and were prohibited from taking frocks from the plant).

The defendants' feeble assertion that they do not "control" the manner in which the plaintiffs don and doff the frocks does not stand up to analysis and, indeed, borders on the absurd. It is irrelevant whether the plaintiffs have "flexibility" to put the frocks on in the locker

room or the hallway; by this logic, taken to its extreme, the defendants could also argue that the donning of the frocks is not required, as they do not specify that plaintiffs must don the frocks feet first or head first, while sitting or while standing. Additionally, the defendants' assertion that there are "relatively few government requirements" that determine the apparel worn by workers in the meat processing industry is likewise unavailing, as the relevant inquiry here is not whether the pre-production activities at issue are required by law, but rather whether the employer "required or suffered" the employees to engage in those activities, *see Brock*, 236 F.3d at 801, which they indisputably did. Moreover, the fact that the plaintiffs are not required to be at the plant at a specific time to don the frocks is irrelevant, as each employee is required to be dressed in the frock and ready at his or her position in the production line at the Pay Start Time—which necessarily requires plaintiffs to report to the Goodlettsville Plant in advance of their Pay Start Times to change into their frocks. Finally, the fact that there may be individual differences in how long it takes particular plaintiffs to engage in these activities does not affect the question of whether these activities are required, but simply affects the determination of the appropriate compensation.

The undisputed facts demonstrate that the defendants here required the plaintiffs to remove these particular frocks from their lockers, don and doff these frocks, and exchange and stow the frocks prior to and following every shift, satisfying the first element of the test to determine whether the plaintiffs engaged in work compensable under FLSA.

C.      *For Employer's Benefit*

As the donning and doffing of frocks are required by the defendants, the next issue is whether these activities "necessarily and primarily" benefit the defendants. *Tenn. Coal*, 321 U.S. at 598; *Brock*, 236 F.3d at 803.

23

Here, the Ninth Circuit's ruling in *Ballaris* is instructive. In that case, the Court held that the donning and doffing of uniforms by employees at a silicon chip manufacturing plant benefitted the employer because the uniforms "were required to limit potential cleanroom contamination, and thereby to assist the employer is ensuring the quality of the silicon chips manufactured at the plant." *Ballaris*, 370 F.3d at 911. Such reasoning has also been applied in cases involving the meat processing industry, notably by the Ninth Circuit in *Alvarez*, which ruled that the donning of protective gear—which included the donning of a frock—was done for the benefit of the employer. *Alvarez*, 339 F.3d at 903 (holding that "it is beyond cavil that the donning, doffing, washing, and retrieving of protective gear is, at both broad and basic levels, done for the benefit of IBP.").

The defendants do not dispute that the purpose of the frock is to maintain sanitary conditions on the production floor and to prevent the defendants' product from becoming contaminated. The defendants argue, however, that the frocks also benefit the plaintiffs by keeping their street clothes from becoming dirty. Though it is perhaps the case that the frocks provide a benefit to the plaintiffs, that does not alter the fact that the reason the defendants require their employees to wear frocks is motivated not by the employees' needs, but rather by the defendants' need to maintain a sanitary production floor. Moreover, although the frocks are not specifically required by federal law, their use enables the defendants to meet federal regulations requiring employees to wear clean garments and the company to maintain hygienic practices on the production floor. Additionally, the court is unpersuaded by a recent district court ruling on which the defendants rely (Docket No. 258), in which the plaintiffs' summary judgment motion was denied on the grounds that there were factual questions as to whether the employer reaped the "primary benefit" of donning and doffing, though it was clear that the

24

employer reaped "some benefit." *Chao v. Tyson Foods, Inc.*, No. 2:02-CV-1174-VEH, slip op. at 24-27 (N.D. Ala. Jan. 22, 2008). The fact is that the frocks enable the defendants to maintain the cleanliness of their facilities and prevent their product from becoming contaminated. This benefit is enormous when one considers the damage that would result to the defendants if they were to sell a contaminated food product. The minor benefit to the employees of keeping their street clothes clean pales by comparison. As such, there is no question that, as a matter of law, it is the defendants who reap not only *some* benefit from the donning and doffing of the frocks, but the *primary* benefit of doing so.

Finally, the fact that plaintiffs may socialize during the time that they are donning and doffing their frocks is irrelevant. The plaintiffs only socialize during that time because they are required to be at the plant to don their frocks and gear; there is no reason to believe they would choose to socialize during that time if they were not required to be at the plant donning and doffing their frock at the defendants' behest. *See Chao*, 184 Fed. Appx. at 511 (noting that time spent waiting prior to shift was for defendant's benefit, despite fact that employees may have socialized during that time).

Because the frocks are required by the defendants, and because the wearing of the frocks necessarily and primarily benefits the defendants, the donning and doffing of the frocks therefore constitute work.

### D.    Integral and Indispensable

Having concluded that the preliminary and postliminary activities at issue here constitute work, as they are both required by the defendants and pursued for the defendants' benefit, the court must consider next whether those activities are so integral and indispensable to the

plaintiffs' principal activities such that they are not excluded from FLSA coverage by the Portal-to-Portal Act. *See Steiner*, 350 U.S. at 256.

An activity is integral and indispensable if it is "performed as part of the regular work of the employees in the ordinary course of business." *Duchon v. Cajon Co.*, 840 F.2d 16 (6th Cir. 1988). Factors relevant to whether an activity is integral and indispensable are essentially the same as those relevant to whether an activity qualifies as work, requiring consideration of whether the activity is required by the employer and is necessary to the employee's principal activities, and whether the benefit of the activity inures primarily to the employer.[22] *See Alvarez*, 339 F.3d at 902-03 ("To be 'integral and indispensable,' an activity must be necessary to the principal work performed and done for the benefit of the employer."); *Bonilla*, 487 F.3d at 1344 ("The factors to be considered are: (1) whether the activity is required by the employer, (2) whether the activity is necessary for the employee to perform his or her duties, and (3) whether the activity primarily benefits the employer."). The changing of clothes may be considered integral and indispensable to an employee's principal activities "where the changing of clothes *on the employer's premises* is required by law, by rules of the employer, or by the nature of the work." *Ballaris*, 370 F.3d at 910 (citing 29 C.F.R. § 790.8(c)) (emphasis in the original). Additionally, the mere fact that the donning and doffing of gear may be simple or common in a particular work environment does not mitigate against a finding that those activities are integral and indispensable. *Alvarez*, 339 F.3d at 903.

---

[22]In fact, some courts effectively combine the "work" and "integral and independent" analyses and consider just two factors: whether the activity is required by the employer and whether it benefits the employer. *See, e.g.*, *Ballaris*, 370 F.3d at 910-12; *Alvarez*, 339 F.3d at 902-03 (ruling, without discussion, that activities constituted work "as a threshold matter," and then analyzing in detail whether activities were necessary and benefitted the employer in context of ruling on "integral and indispensable" question).

The defendants assert that the facts of *Steiner* do not permit the conclusion that the activities at issue here are integral and indispensable, as *Steiner* involved employees working in a battery plant who handled exceedingly dangerous and caustic materials in the course of their work. While it is the case that *Steiner* involved a work environment far more extreme than that at the Goodlettsville Plant, there is no basis for concluding that *Steiner* is limited to such extreme circumstances. Indeed, courts have applied *Steiner* in much more mundane industrial settings, including meat processing plants such as the Goodlettsville Plant. *See, e.g.*, *Alvarez*, 339 F.3d at 903 (holding that donning and doffing of frock and gear by meat processing plant employees are integral and indispensable under *Steiner*); *Spoerle v. Kraft Foods Global, Inc.*, No. 3:07-cv-00300-bbc, 2007 U.S. Dist. LEXIS 95037, at *8 (W.D. Wisc. Dec. 31, 2007) (same).

The defendants also rely on the Second Circuit's ruling in *Gorman v. Consolidated Edison Corp.,* 488 F.3d 586 (2d Cir. 2007), interpreting *Steiner* as limited to work "done in a lethal atmosphere." In holding that the donning and doffing of generic protective gear is not integral and indispensable, *id.* at 594, *Gorman* stands in contrast to the rulings in *Ballaris* and *Alvarez*. However, the *Gorman* Court did not explicitly consider whether the activities at issue there were required and necessary and whether they primarily benefitted the employer, and concluded, somewhat inexplicably and in reliance on *Reich*, that an activity is not necessarily integral just because it was "required by the employer or by governmental regulation." *Id.*

Regardless, though, *Gorman* is distinguishable from the case at hand. The gear at issue in *Gorman* was only safety boots, safety glasses, and a helmet. *Id.* at 592. The "gear" at issue here—that is, the frock that the plaintiffs are required to don and doff—can hardly be characterized as generic, as evidenced by the facts that the frock has certain design features specific to the job and that plaintiffs are not permitted to use a frock of their choosing.

27

Moreover, the plaintiffs are not permitted to clean, store, or don their frocks at home, are required by the defendants to wear those frocks at all times on the production floor, and are subject to discipline for failing to do so; additionally, the frocks are both necessary to the plaintiffs' jobs and benefit the defendants, in that they allow for the maintenance of sanitary conditions on the production floor and prevent the defendants' product from becoming contaminated. *See Spoerle*, 2007 U.S. Dist. LEXIS at *8-*9 (holding that donning and doffing of gear and frock at meat processing plant was integral and indispensable where it was necessary to perform job safely, where it was required by company policy and federal law, and where the failure to do so resulted in discipline). Thus, the donning and doffing of the frocks do not constitute the "changing of clothes and showering under normal conditions," which is not compensable under *Steiner*, 350 U.S. at 249, but rather an integral and indispensable activity for which compensation is required.[23] As the donning and doffing of the frocks are integral and indispensable to the plaintiffs' principal activities, then, under *Alvarez*, the donning and doffing themselves are principal activities and mark the beginning and the end of the continuous workday, such that the plaintiffs are entitled to compensation for those activities and any and all

---

[23]This holding is not to suggest that the donning of gear—which generally shortly follows the donning of the frock—would not otherwise itself be compensable work and be integral and indispensable to the plaintiffs' principal activities. Indeed, to separate out the act of donning the frock from the act of donning the other standard protective gear worn by all employees, as the plaintiffs have urged, is a bit like splitting hairs, in that those activities are very closely tied in time and in nature. Regardless, as the plaintiffs have demonstrated as a matter of law that the donning and doffing of the frock constitutes compensable work that is integral and indispensable to their principal activities, then, under the continuous workday rule, there is no need to consider independently the compensability of the other activities that occur within that period.

other activities—including any walking, waiting, collecting, sanitizing, and donning of standard or specialized gear—that occurs between those two activities.[24]  *See Alvarez*, 546 U.S. at 33.

Finally, the court will address briefly the plaintiffs' argument that the continual workday begins with the removing of the frock from the locker prior to donning of the frock and ends with the exchanging of the soiled frock for a clean frock and stowing of the clean frock in the locker following doffing of the frock.  While it may be the case that each activity in this entire cycle is necessary from a causal point of view—that is, an employee could not retrieve a clean frock from his or her locker had he or she not previously exchanged the soiled frock—that alone is not sufficient to establish that those activities are integral and indispensable to the plaintiffs' principal activities.  *See Bonilla*, 487 F.3d at 1344 ("If mere causal necessity was sufficient to constitute a compensable activity, all commuting would be compensable because it is a practical necessity for all workers to travel from their homes to their jobs.  If the Portal-to-Portal Act is to have any meaning at all, its terms cannot be swallowed by an all-inclusive definition of 'integral and indispensable.'").  The acts of retrieving, exchanging, and stowing are not so integral to the plaintiffs' principal activities, in that they are not required by the nature or exigencies of the plaintiffs' work, but rather merely by the physical and logistical organization of the plant.

Thus, the acts of donning and doffing the frock serve, respectively, as the beginning and the end of the plaintiffs' compensable workday, and all other activities performed in the interim are compensable under the continuous workday rule, while other preliminary and postliminary

---

[24]As it is undisputed that all of the plaintiffs are required to don and doff their frocks prior to and following each shift at the Goodlettsville Plant, the holding that these activities mark the beginning and the end of the workday renders immaterial the many minor factual disputes regarding the precise complement of gear that plaintiffs wear, on which the defendants rely in their attempt to defeat summary judgment.

29

activities that precede or follow the donning and doffing—such as retrieving, exchanging, and stowing—are not compensable, as they are not integral and indispensable to the plaintiffs' principal activities.

E.    *De Minimis*

The plaintiffs also seek summary judgment as to the defendants' argument that the amount of time involved in the pre- and post-production activities is *de minimis*, regardless of whether it is otherwise compensable under FLSA.

As the Supreme Court noted, "[s]plit-second absurdities are not justified by the actualities of working conditions or by the policy of the [FLSA].  It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved."  *Mt. Clemens Pottery*, 328 U.S. at 692.  Thus, even though the plaintiffs' pre- and post-production activities constitute work and are integral and indispensable to the plaintiffs' principal activities, those activities may yet be excluded from FLSA coverage if the time spent on them is *de minimis*.  The determination of whether the time spent on a particular activity is *de minimis* requires a consideration of the amount of daily time spent on the activity, as well as "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work."  *Lindow v. United States*, 738 F.2d 1057, 1062-63 (9th Cir. 1984)); *Brock*, 236 F.3d at 804 (citing *Lindow*, 738 F.2d at 1062-63).

The Supreme Court has noted, however, that the precise amount of time that can be considered *de minimis* ultimately is a question for the trier of fact.  *Mt. Clemens Pottery*, 328 U.S. at 692.  And, indeed, the parties provide widely ranging estimates of the amount of time that the plaintiffs spend completing the required pre- and post-production activities.  Moreover,

30

the *de minimis* analysis is complicated by the parties' dispute over the feasibility of determining the amount of time that the employees spend performing compensable pre- and post-production activities as well as variations in the amount of time spent by employees engaged in these activities.

As the process of parsing out how much time plaintiffs engage in compensable activities is fundamentally factual, and as there exist genuine issues of fact as to the application of the *de minimis* rule in this case, summary judgment on this issue is inappropriate.

## IV.   Meal Period Claim

Before turning to a consideration of the plaintiffs' motion for summary judgment as to their meal period claim, we briefly address the factual circumstances and the merits of the plaintiffs' motion to strike and the defendants' motion to decertify.

### A.      *Motion to Strike*

On August 20, 2007, in keeping with the scheduling order in effect in this case, the defendants moved to decertify what they termed the plaintiffs' "meal period production work" claim. ("First Motion to Decertify," Docket No. 234.)  The First Motion to Decertify did not extend to the plaintiffs' entire meal period claim, excluding that aspect of the claim that addressed compensation for non-production work—including the donning and doffing of frocks and gear—and extending only to that aspect of the claim that involved production work.  The plaintiffs opposed the First Motion to Decertify and characterized it as an attempt by the defendants to splinter the plaintiffs' single meal period claim encompassing the defendants' alleged failure to compensate the plaintiffs for both production work and non-production work performed during the meal period.  (Docket No. 245.)

31

Then, on October 9, 2007, the defendants filed a reply combined with a second motion to decertify that extended to the plaintiffs' entire meal period claim. ("Reply and Second Motion to Decertify," Docket Nos. 250, 251). In the Reply and Second Motion to Decertify, the defendants argued that the meal period claim actually consists of two claims—one for production work and one for non-production work—that, they claim, the plaintiffs wrongly "bundled" in their opposition to the First Motion to Decertify. The defendants further argued that the plaintiffs' argument was premised on the assumption that donning and doffing of the frock and gear are compensable activities.

In response to the Reply and Second Motion to Decertify, the plaintiffs filed a Motion to Strike the portion of that brief that constituted the second motion to decertify the entire meal period claim, arguing that such motion was untimely under the governing scheduling order and that the scope of the reply exceeded that of the original motion. (Docket No. 255.) The defendants responded to the motion to strike, arguing that the plaintiffs first asserted a "unified theory of recovery" with respect to the production and non-production aspects of the meal period claim in their opposition to the First Motion to Decertify.

First, it is abundantly clear that, to the extent the defendants sought to decertify the entire meal period claim in their Reply and Second Motion to Decertify, such motion is untimely. The governing scheduling order was issued on March 6, 2007, and the parties were granted an extension of time to file their motions for decertification and summary judgment. The defendants thus had ample notice of the deadline for their motion to decertify. There does not

32

appear any reason why they did not simply move to decertify the entire meal period claim in their First Motion to Decertify, had they wished to do so.[25]

The defendants are correct that certification issues may evolve and require reconsideration as the parties gain information and as new theories arise. However, such is not the case here. The defendants' argument that the plaintiffs first "bundled" the two aspects of their meal period claim in their response to the First Motion to Decertify is without merit. Indeed, in the complaint, the plaintiffs asserted three claims: that they had not been compensated for "[w]ork before 'official' clock in time," "[w]ork after 'official' clock out time," and "[w]ork during scheduled meal periods." (Docket No. 1 ¶ 13.) The meal period claim outlined in the complaint extended specifically to both production work performed during the meal period and to donning and doffing performed during that time:

> The defendants deduct 30 minutes per day from each hourly employee's paycheck regardless of whether or not the employee has a meal break or is able to spend the full 30 minutes eating lunch. . . . Hourly production line and production floor employees rarely, if ever, leave for lunch on time. Employees are not allowed to leave the line as long as there is meat on the line. Moreover, employees must don and doff some of their gear and equipment during their uncompensated meal periods.

(Docket No. 1 ¶ 13.) Moreover, upon conditionally certifying the plaintiffs' meal period claim, the court noted that the certification encompassed both "clothes changing and washing activities" as well as "unpaid production work during meal periods." (Docket No. 120 at 2.)

---

[25]In the First Motion to Decertify, the defendants apparently anticipated filing an additional motion, noting that "Defendants do not concede that plaintiffs' other claims do not require individualized determination. At this time, however, defendants are moving to decertify only the meal period production claim." (Docket No. 235 at 1 n.1.) It is unclear why, given the scheduling order in effect, the defendants believed at the time they filed the First Motion to Decertify that a subsequent motion would be entertained absent some compelling circumstance.

33

Thus, those sections of the Reply and Second Motion to Decertify that seek the decertification of the plaintiffs' entire meal period claim—rather than just the production work aspect of that claim—are stricken as untimely.[26]

B.     *Motion to Decertify*

A FLSA plaintiff must demonstrate that the members of the class are similarly situated at two junctures in the course of litigation: first during the "notice stage," at which a court determines whether notice should be given to putative class members, and then again at the "decertification stage" after discovery is complete.  *Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700, at *2 (M.D. Tenn. Sept. 26, 2006) (citations omitted).  The burden of demonstrating that class members are similarly situated is significantly higher at the decertification stage and requires consideration of the disparate factual and employment settings of the individuals, the defenses available to the defendants, and fairness and procedural considerations.  *Id.*

The plaintiffs claim that the production work aspect of the meal period claim is suitable for class treatment, as they are all hourly employees who perform meat production work at the Goodlettsville Plant.  They further assert that they are all subject to a common policy under which the defendants automatically deduct thirty minutes of pay for each shift an employee works.  Finally, they assert that the defendants' attempt to decertify one aspect of their meal period claim is without precedent and makes little sense, as the remainder of the meal period claim—regarding non-production work—will proceed under any circumstances.

With respect to the plaintiffs' factual and employment settings, one factor particularly relevant is "whether they were all impacted by a 'single decision, policy, or plan.'" *Id.* at *3

_____

[26]The stricken portion comprises Section B of the Reply and Second Motion to Decertify. (Docket No. 251 at 8-14.)

34

(citing *Moss v. Crawford & Co.*, 201 F.R.D. 398, 409 (W.D. Pa. 2000)). Consideration of this factor necessarily raises the question of how exactly the meal period at the Goodlettsville Plant is measured—that is, whether it begins at a given time for all employees regardless of whether meat remains on the production line, requiring some employees to continue production work after the start of the meal period, or whether it begins as each employee individually leaves the production line after the last piece of meat passes his or her station. To some extent then, the strength of the plaintiffs' claim that the class members are required to perform production work during the meal period will turn on this question, which is in dispute and is not suitable for resolution at this point in the litigation, *see* Section IV.C. *infra*, but which, ultimately, is a question common to all of the plaintiffs.

Beyond this factor, the plaintiffs are correct that, in a broad sense, they are similarly situated in that they are all meat processing plant employees. As the defendants point out, though, deposition testimony reflects that the plaintiffs had widely varying experiences with regard to production work during meal periods and that those experiences may not be generalized by job type or category. But the defendants' argument is predicated on their conception of the meal period claim as two distinct claims—a production work claim and a non-production work claim—when there is no apparent reason or justification for treating the claim as such. Indeed, if one considers the meal period claim as a single claim, then the factual similarities among the plaintiffs become overwhelming, as the defendants do not dispute that all employees were required to don and doff their frocks and gear prior to and after eating. It is only when the defendants pry off one slice of the meal period claim that the factual differences become more prominent. Moreover, even considering the so-called meal period production work claim alone, the factual differences among the plaintiffs are not so extreme as to require

35

decertification; plaintiffs need not be "identically situated" to be considered "similarly situated." *Wilks*, 2006 WL 2821700, at *3. Here, any differences among the plaintiffs may be addressed through the creation of subclasses of plaintiffs—those who performed only non-production work during the meal period, and those who performed both non-production work and production work during the meal period.[27]

With respect to the available defenses, the defendants claim that the factual variations among the plaintiffs will require them to obtain testimony from "each supervisor who managed each plaintiff in each position that employee held." The plaintiffs, by contrast, contend that the likely defenses are actually uniform and suitable for collective resolution. As was the case in *Wilks*, the defenses here are amenable to collective resolution in that the defendants will have ample opportunity to demonstrate that they do not employ a policy or practice which has the effect of denying plaintiffs compensation to which they are entitled under FLSA and may cross-examine the representative plaintiffs and adduce other testimony that supports their position. *Id.* at *7. As such, decertification is not necessary to enable the defendants to adequately defend themselves.

Finally, the relevant fairness and procedural considerations require a determination of whether certification would serve the purposes of FLSA either by "lower[ing] the cost of the action to individual plaintiffs" or by "increas[ing] judicial utility by providing for efficient

---

[27]The defendants suggest that decertification is appropriate here because, unlike *Wilks*, the plaintiffs may not be divided into sub-classes based on job category because factual variations occur across categories. But *Wilks* merely stands for the proposition that courts may fashion subclasses as a means of ensuring judicial efficiency and fairness where there are some factual variations; there is no reason that such classes must be based on job category rather than simply on the basis of whether plaintiffs were or were not required to perform production work, in addition to non-production work, during meal periods.

36

resolution of many claims in one proceeding." *Id.*  Here, the unavoidable fact is that the

plaintiffs' meal period claim with respect to non-production work will go forward under any

circumstances.  *See* Section IV.A. *supra*.  Thus, there is an exceptionally strong interest not only

in resolving the claims of the plaintiffs collectively, but also in resolving both aspects of the

meal period claim itself in the course of this single litigation.

As such, the defendants' motion for decertification of the production work aspect of the

meal period claim will be denied.

      C.     *Summary Judgment*

The plaintiffs seek summary judgment with respect to their claim that they are denied a

bona fide meal period in that they are required to perform compensable activities—including

production work as well as the doffing and donning of frocks and gear—during the

uncompensated thirty-minute meal period that they are allowed each shift.

A "bona fide meal period" of thirty minutes need not be compensated so long as

employees are not "required to perform any duties, whether active or inactive, while eating."[28]

29 C.F.R. § 785.19(a).  The Sixth Circuit has stated that a meal period is bona fide "[a]s long as

the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the

performance of any substantial duties, and does not spend time predominantly for the employer's

benefit, the employee is relieved of duty and is not entitled to compensation under the FLSA."

*Hill v. United States*, 751 F.2d 810, 814 (6th Cir. 1984).[29]  The question of whether activities

---

[28]By contrast, "rest periods" generally lasting from five to twenty minutes, must be
compensated.  29 C.F.R. § 785.18.

[29]The plaintiffs also rely on a Wage and Hour opinion letter issued by the Department of
Labor providing that "the meal period may not include any time performing 'work,' and that
time spent donning and doffing of personal protective equipment, clothing or gear before or after
the meal period is compensable."  Although opinion letters are "entitled to some credence," *Hill*,

performed during a meal period are predominantly for the benefit of the employer is "highly individualized and fact-based." *See Beasley v. Hillcrest Med. Ctr.*, 78 Fed. Appx. 67, 70 (10th Cir. 2003); *Bernard v. IBP, Inc.*, 154 F.3d 259, 265 (5th Cir. 1998) ("Whether meal time is predominantly for the benefit of the employer is a question of fact that is ordinarily resolved by the trier of fact after hearing all of the evidence.").

Here, there are genuine issues of fact as to whether the activities performed during the meal period predominantly benefit the defendants, in that the parties vigorously dispute how much time the plaintiffs must spend doffing and donning their frocks and gear during the meal period. The plaintiffs assert that these tasks take at least ten minutes, whereas the defendants claim these activities take no more than four; this dispute is essentially the same as that raised by the defendants' *de minimis* argument and likewise may not be resolved on summary judgment. Moreover, there is a genuine issue of fact as to how the meal period is measured and thus whether the plaintiffs are required to engage in production work during the course of the meal period, in that the plaintiffs assert that certain employees must perform production work if there is still meat on the production line at the time the meal period begins, while the defendants claim that each employee's meal period does not begin until the last piece of meat passes that employee's station on the line. Finally, the parties dispute the nature and application of the defendants' restroom policy, and how that affects the plaintiffs' use of time during the meal period.

---

751 F.2d at 814, in this case it is not at all clear that the "predominant benefit" test articulated in *Hill* is coextensive with the general standard for determining whether "work" is compensable, as the opinion letter implies. The persuasive power of the opinion letter is further limited because it makes no reference to the "predominant benefit" test, nor does it provide any rationale for equating that test with the general compensability standard.

As there are genuine issues of material fact as to what activities are performed during the meal period and as to whether those activities predominantly benefit the defendants, the plaintiffs' motion for summary judgment will be denied.

## V.      Good Faith Defense to Liability

The plaintiffs also have moved for summary judgment with respect to the defendants' good faith defense to liability under Section 259 of the Portal-to-Portal Act.  The defendants, however, have chosen not to pursue this defense (Docket No. 244 at 32); thus the plaintiffs' motion with regard to the defense is moot.

## VI.     Liquidated Damages

Finally, the plaintiffs have moved for summary judgment with regard to their claim for liquidated damages.

Under FLSA, an employer in violation of the statute "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  However, a court "in its sound discretion" may reduce the amount of liquidated damages if an employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of [FLSA]."  29 U.S.C. § 260.

To demonstrate that a good faith reduction in liquidated damages is appropriate,[30] an employer must demonstrate that the violation was "both in good faith and predicated upon such

---

[30]The good faith defense to liquidated damages embodied in Section 260 is distinct from the good faith defense to liability embodied in Section 259, which is not at issue here.  *See* Section V *supra*.

reasonable grounds that it would be unfair to impose [liquidated damages]." *Elwell v. Univ. Hosps. Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002) (citing *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971)). This burden is "substantial," and unless an employer carries this burden, a district court lacks power or discretion to reduce liquidated damages for an employer found liable for violating FLSA. *Id.*

The defendants assert that plaintiffs have failed to provide any facts relevant to the good faith defense to liquidated damages. However, the defendants misstate the burden under Section 260—it is not the responsibility of the plaintiffs to prove bad faith, but, rather, it is the defendants' burden to prove good faith. *Id.* Additionally, the defendants argue that a ruling on liquidated damages is premature as there are genuine issues of fact as to "whether defendants violated the FLSA or acted in good faith." As has been discussed already, however, the only genuine issues of fact that exist go to the application of the *de minimis* rule, and the defendants have not come forward with any facts that would justify a reduction in liquidated damages if the *de minimis* rule does not apply to the uncompensated work in which the plaintiffs engage.

Thus, the plaintiffs' motion for summary judgment with respect to the defendants' defense to liquidated damages under Section 260 will be granted.

Case 3:02-cv-01132   Document 260   Filed 03/31/08   Page 40 of 41 PageID #: 2229

## CONCLUSION

For the reasons discussed herein, the motion for partial summary judgment filed by the plaintiffs will be granted in part and denied in part. Specifically, summary judgment will be granted with regard to the plaintiffs' claim that the donning and doffing of frocks is compensable under FLSA, denied with regard to the question of whether the time that the employees spend engaging in such activities is *de minimis*, and denied with regard to the plaintiffs' meal period claim. The plaintiffs' summary judgment motion with regard to the defendants' good faith defense to liability is moot, and summary judgment will be granted with regard to the defendants' good faith defense to liquidated damages.

Additionally, the motion to strike filed by the plaintiffs will be granted, and the motion to decertify filed by the defendants will be denied.

An appropriate order will enter.


ALETA A. TRAUGER
United States District Judge

41