IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EMILY D. JORDAN, et al., ) | |
| on behalf of themselves and all others ) | |
| similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:02-cv-1132 |
| ) | Judge Trauger |
| IBP, INC. and ) | |
| TYSON FOODS, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

On March 31, 2008, this court entered a Memorandum and Order granting in part and denying in part a Motion for Partial Summary Judgment filed by the plaintiffs in this case. (Docket Nos. 260, 261 ("Memorandum").) The plaintiffs have now filed a Motion for Reconsideration of certain aspects of the Memorandum (Docket No. 262) to which the defendants have responded (Docket No. 269). Additionally, the defendants have filed a Motion to Alter or Amend certain other aspects of the Memorandum (Docket No. 263), to which the plaintiffs have responded (Docket No. 268), and the defendants have replied (Docket No. 275). Finally, the defendants have moved to strike a declaration offered by the plaintiffs in support of their Motion for Reconsideration (Docket No. 270).

For the reasons discussed below, the defendants' Motion to Strike will be denied as moot, the plaintiffs' Motion for Reconsideration will be denied, and the defendants' Motion to Alter or Amend will be denied as to the central rulings of the Memorandum. The parties' motions,

1

however, have afforded this court the opportunity to address certain issues in greater detail and to clarify the rulings contained in the Memorandum. To the extent that this decision makes minor modifications or clarifications to the Memorandum, they will be explained herein.

## BACKGROUND

The plaintiffs work at a meat processing plant operated by the defendants and have filed this collective action alleging that the defendants have denied hourly employees working on the plant's production floor compensation to which they are entitled in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* The Memorandum discussed in detail the facts of this case and provided an overview of the applicable provisions of FLSA and the Portal-to-Portal Act and the judicial decisions interpreting those statutes. (Docket No. 260.) The following discussion will presume familiarity with the Memorandum.

## ANALYSIS

**I. Standard**

Rule 59(e) provides for motions to alter or amend a judgment. Such motions are granted when "there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted).

With respect to motions for reconsideration, the Court of Appeals for the Sixth Circuit has observed that the "Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders" but has provided that "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89

Fed. Appx. 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). The standard for motions for reconsideration that the Sixth Circuit applied in *Rodriguez* is essentially the same as that for motions to alter or amend under Rule 59(e), in that "courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)).

As such, the same standard governs both the plaintiffs' motion for reconsideration and the defendants' motion to alter or amend.

## II.     Plaintiffs' Motion for Reconsideration

The plaintiffs have moved for reconsideration with respect to two aspects of the Memorandum. First, they challenge that portion of the Memorandum denying summary judgment as to their claim that the amount of time in which employees engage in pre- and post-production work is not *de minimis* as a matter of law. Second, they challenge the Memorandum's conclusion that the donning and doffing of frocks mark the beginning and end of the compensable workday, respectively, and that activities that take place prior to or following donning and doffing—specifically, the retrieving, exchanging, and stowing of the frocks—are not compensable and do not themselves define the outer limits of the workday.

### A.     *The* De Minimis *Defense*

The plaintiffs sought summary judgment with respect to the *de minimis* rule, asserting that the time that employees spend engaged in pre- and post-production work is not *de minimis* as a matter of law. In the Memorandum, this court held that, with respect to the *de minimis* rule,

3

"the precise amount of time that can be considered *de minimis* ultimately is a question for the trier of fact" and declined to apply in any detail the test to determine whether the time spent on a particular activity is *de minimis*. (Docket No. 260 at 30-31 (citing *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 690-92 (1946)).)

The *de minimis* rule was established by the Supreme Court in *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680 (1946), *superseded in part by statute*, Portal-to-Portal Act, 61 Stat. 86-87, *as recognized in Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 649 (2d Cir. 1995). The Court of Appeals for the Ninth Circuit articulated the widely-accepted test governing the application of the rule in *Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984), which has been cited favorably by the Sixth Circuit, *see Brock v. City of Cincinnati*, 236 F.3d 793, 804 (6th Cir. 2001). The *Lindow* court noted that "[a]n important factor in determining whether a claim is *de minimis* is the amount of daily time spent" on the compensable activity and went on to enumerate three elements to be considered in this analysis, including "(1) the practical administrative difficulty of recording additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Lindow*, 738 F.2d at 1062-63; *see Brock*, 236 F.3d at 804 (citing *Lindow*). As *Lindow* recognized, the fundamental question in the *de minimis* analysis is how much time employees engage in compensable work during the course of a single workday, and the three elements subsequently enumerated by the Court are relevant to assessing whether the time spent by employees passes the *de minimis* threshold.

In their pending motion, the plaintiffs assert that the application of the *Lindow* test reveals that the *de minimis* rule is not applicable as a matter of law and that this court erred in holding in the Memorandum that questions of fact remain. (Docket No. 262 at 3-12.) The

4

plaintiffs argue that, as employees are required to clock in as they enter the production floor but are only paid from their Pay Start Time, some compensable time is in fact recorded by the defendants.[1]  (Docket No. 262 at 3, 6-7.)  This fact, the plaintiffs argue, renders the *de minimis* rule unavailable to the defendants.

        1.        Practical administrative difficulty of recording time

The plaintiffs argue that the *de minimis* rule is unavailable if it is feasible for the employer to record compensable time.  (Docket No. 262 at 5, 9.)  The plaintiffs further claim that, as the defendants do in fact record some portion of the time employees spend engaged in pre- and post- production work,[2] it is feasible for them to record all of that time.  (Docket No. 262 at 7.)

In support of this argument, the plaintiffs rely on a Department of Labor ("DoL") interpretation of the *de minimis* rule, which is, according to the plaintiffs, entitled to controlling deference.  (Docket No. 262 at 4.)  However, though the interpretation serves as a "practical guide for employers and employees" as to the positions taken by the DoL in enforcing FLSA,

---

[1] The plaintiffs clock in for attendance purposes as they enter the production floor.  Their compensated shift, however, does not begin until their "Pay Start Time," which corresponds to the time that the defendants estimate the first piece of meat will pass each employee's respective station on the production line.  Between clock-in and Pay Start Time, employees perform certain compensable activities, and the plaintiffs argue that this time is recorded in that it can be determined by comparing an employee's clock-in time to his or her Pay Start Time.  (Docket No. 262 at 7-8.)

[2] The plaintiffs acknowledge, however, that the recorded time does not include all of the time that employees engage in pre-production work, as some compensable activities occur prior to clock-in, nor does the recorded time account for any of the time in which employees engage in compensable post-production work.  (Docket No. 262 at 6, 8 n.4.)  As such, the plaintiffs recognize that at least some of the time that employees spend engaged in compensable pre- and post-production work will necessarily need to be determined by a jury.  (Docket No. 262 at 6; 8 n.4.)

5

"[t]he ultimate decision on interpretations of the act are made by the courts." 29 C.F.R. § 785.2 (citing *Skidmore v. Swift*, 323 U.S. 134, 138 (1944)). Thus, the interpretation is entitled to deference to the extent it has the power to persuade, *Skidmore*, 323 U.S. at 140 ("[R]ulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."), but it is not, as the plaintiffs claim, entitled to controlling deference, *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1342-43 (11th Cir. 2007) (noting that interpretations "are not promulgated regulations" and that deference under the standard set forth by the Supreme Court in *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), is not warranted).

The interpretation indicates that the *de minimis* rule "applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities." 29 C.F.R. § 785.47. According to the interpretation, the *de minimis* rule is not intended to permit employers to "arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him." *Id.* On the basis of this language, the plaintiffs assert that if it is at all feasible for an employer to record time, regardless of the difficulty of such measurement, the *de minimis* rule is unavailable.

6

However, under *Lindow*, the "practical administrative difficulty" of measuring time is one of several factors relevant to the *de minimis* analysis. Additionally, the question under this prong of *Lindow* is not whether measuring time is *impossible*, as the plaintiffs effectively argue, but rather whether measuring time is *difficult*. Likewise, though the DoL interpretation requires compensation for all time worked "however small," its reference to "considerations justified by industrial realities" indicates that an employer is not necessarily precluded from asserting a *de minimis* defense if the time at issue can be measured, but rather is only precluded from relying on the rule if the time at issue can be measured in light of "industrial realities." The plaintiffs' interpretation would, in effect, substitute a "practical administrative impossibility" test for the "practical administrative difficulty" test articulated by *Lindow* and cited favorably by the Sixth Circuit in *Brock*. Additionally, the interpretation urged by the plaintiffs would elevate the "practical administrative difficulty" element above the other elements of the *Lindow* test and render it a threshold consideration rather than one of several elements of comparable value. The DoL interpretation cited by the plaintiffs does not warrant this deviation from *Lindow*.

Contrary to the plaintiffs' argument, as this court held in the Memorandum, there exists a genuine issue of fact as to difficulty of measuring the time employees spend engaged in pre- and post-production work. Although the defendants' current system enables them to determine the amount of time that elapses between a particular employee's clock-in and that employee's Pay Start Time, as the plaintiffs themselves acknowledge, not all compensable activities occur during this interim, and thus there is time spent on compensable activities that is not measured under the current system. Additionally, it is not clear that all of the time measured during this interim is in fact compensable for purposes of the *de minimis* analysis. At best, this measurement is an

7

incomplete and imprecise estimate of that time that employees spend engaged in pre-production work. Although the fact that the defendants can calculate certain stretches time to the minute may suggest that the defendants could measure the time employees spend engaged in compensable activities without too much added difficulty, that alone does not establish the absence of any factual issues with respect to the *de minimis* rule.

2. Aggregate amount of compensable time

The plaintiffs assert that employees spend an average of 13.02 minutes per day performing compensable work between clock-in and Pay Start Time in addition to the unmeasured time they spend engaged in compensable work prior to clock-in and post-production.[3] (Docket No. 262 at 10.) The plaintiffs allege that this amount of time exceeds the threshold of what may be considered *de minimis*. (Docket No. 262 at 10.)

The plaintiffs ignore the fact, however, that the defendants strongly dispute the plaintiffs' assertion regarding the calculation of this time and that the defendants have adduced evidence that the amount of time required for those activities is far lower than the plaintiffs assert. (Docket No. 244 App. ¶¶ 130, 156.) Moreover, the plaintiffs' argument presumes that all of the time between clock-in and Pay Start Time is compensable for the purposes of applying the *de minimis* rule. This is not necessarily the case, however, as employees may engage in noncompensable activities during this time, adding factual complications to the determination of

---

[3]The plaintiffs submitted the declaration of Keith Nickerson and accompanying exhibits in support of this claim. The defendants have moved to strike that declaration and its exhibits, asserting that this evidence was not disclosed to the defendants during discovery nor offered as evidence in support of the plaintiffs' summary judgment motion. (Docket No. 270.) As the conclusion reached with respect to the plaintiffs' motion for reconsideration does not rely on the Nickerson declaration and exhibits, the defendants' motion will be denied as moot.

8

whether the *de minimis* rule applies. If anything, an examination of the plaintiffs' arguments simply provides further support for the conclusion previously reached in the Memorandum: that these determinations are fundamentally factual and are not susceptible to resolution on summary judgment.

        3.      Regularity of additional work

Finally, the plaintiffs argue that there are no disputed facts as to the regularity of the employees' compensable pre- and post-production activities and that these activities occur daily. (Docket No. 262 at 11.) Indeed, the defendants acknowledge that the activities in question occur daily. (Docket No. 244 at 28-29.)

This element of the *Lindow* test lends some support to the conclusion that the time employees spend engaged in compensable pre- and post-production work is not *de minimis*, although the defendants point out that this factor is not necessarily dispositive and that time spent on a daily activity may nevertheless be considered *de minimis*. Given the substantial issues of fact that exist with respect to the first two *Lindow* factors, evidence of regularity alone cannot support a summary judgment ruling that the defendants are precluded from asserting a *de minimis* defense as a matter of law.

Having reconsidered the ruling in the Memorandum that summary judgment would be inappropriate as to the application of the *de minimis* rule, this court finds no error.

    B.    *Compensability of Retrieving, Exchanging, and Stowing*

In the Memorandum, this court held that the donning and doffing of frocks are integral and indispensable to the employees' principal activities and thus are compensable and mark the beginning and end, respectively, of the continuous workday, such that employees must be

9

compensated for all time worked beginning with the donning of the frocks and ending with the doffing of the frocks.[4] (Docket No. 260 at 28-30.) The Memorandum rejected the plaintiffs' argument that activities that precede and follow the donning and doffing of the frocks—specifically, the retrieving of the frocks prior to donning and the exchanging of soiled frocks and stowing of clean frocks after doffing—are compensable activities that mark the beginning and end of the compensable work day, holding that such activities are not integral and indispensable to the employees' principal activities. (Docket No. 29-30.) The plaintiffs now assert that this was in error.

The plaintiffs argue that the Memorandum is inconsistent with a DoL Wage and Hour Advisory Memorandum that states that the act of obtaining gear, along with the donning of gear, is compensable under *IBP v. Alvarez*, 546 U.S. 21 (2005). (Docket No. 262 at 12-13; Docket No. 237 App. at 272-75.) According to the plaintiffs, the DoL's interpretation is entitled to deference. However, though memoranda interpreting regulations promulgated under FLSA are "entitled to some credence," *see Hill v. United States*, 751 F.2d 810 (6th Cir. 1984), the DoL memorandum at issue here purports to interpret neither the statute nor its regulations, but rather the Supreme Court's ruling in *Alvarez*. As the Supreme Court itself stated recently, "agencies have no special claim to deference in their interpretation" of the Court's decisions. *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2177 n.11 (2007).

The plaintiffs also claim that the Memorandum was inconsistent with the "spirit and language" of *Alvarez*. (Docket No. 262 at 2, 12-14.) In *Alvarez*, the Supreme Court held that

---

[4]Such time is compensable barring, of course, a finding that the amount of time involved is *de minimis*.

activities that take place after the performance of the first principal activity and before the performance of the last principal activity are compensable under the continuous workday rule.[5] 546 U.S. at 37. Specifically, the Court held that walking and waiting that occurred post-donning and pre-doffing were compensable. *Id.* at 37, 40. The Court noted, however, that the question of whether time spent waiting to don gear prior to the start of the workday "presents the quite different question whether it should have the effect of advancing the time when the workday begins." *Id.* at 40. With regard to this question, the Court stated that, "unlike the donning of certain types of protective gear, which is *always* essential if the worker is to do his job, the waiting may or may not be necessary in particular situations or for every employee [and] is certainly not 'integral and indispensable' in the same sense that the donning is." *Id.* at 40 (emphasis in the original).

The plaintiffs rely on this language in asserting that the retrieving, exchanging, and stowing of frocks, like the donning and doffing of frocks, must always be performed prior to and following production work, and therefore that these activities are integral and indispensable.[6] (Docket No. 262 at 12-13.) This argument, however, ignores the Court's subsequent statement on the same point that "the fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and

---

[5]The lower court in *Alvarez* held that the workday started and ended with the donning and doffing of protective gear, a ruling that was not at issue in the appeal to the Supreme Court. 546 U.S. at 32.

[6]Likewise, the Wage and Hour Advisory Memorandum, on which the plaintiffs rely, states, "[s]ince, like donning, obtaining the gear (as opposed to waiting to obtain the gear) 'is always essential if the worker is to do his job,' the compensable day starts once the employee has obtained the gear required to be stored on the premises by taking an item out of a bin, a locker or another designated storage area." (Docket No. 237 App. at 272 n.1.)

11

indispensable' to a 'principal activity.'" *Alvarez*, 546 U.S. at 40. The Court went on to rule that pre-donning waiting was not integral and indispensable to a principal activity and thus did not have the effect of advancing the start of the workday. *Id.* at 41. Further, the Court was concerned that, if an activity is considered integral and indispensable simply by virtue of the fact that it is necessary, it could "discern no limiting principle" that would constrain the point at which the continuous workday would begin. *Id.* at 41. If pre-production waiting is integral and indispensable by virtue of its necessity, then, the court reasoned, so too would pre-production walking be integral and indispensable, a conclusion that the Court rejected out of hand as patently inconsistent with the Portal-to-Portal Act. *Id.* The Eleventh Circuit has likewise noted this line-drawing problem, stating that "the 'integral and indispensable' test is not a but-for test of causal necessity," and that "[i]f mere causal necessity was sufficient to constitute a compensable activity, all commuting would be compensable because it is a practical necessity for all workers to travel from their homes to their jobs. If the Portal-to-Portal Act is to have any meaning at all, its terms cannot be swallowed by an all-inclusive definition of 'integral and indispensable.'" *Bonilla*, 487 F.3d at 1344.

Like the plaintiffs in *Bonilla*, the plaintiffs here place great emphasis on the argument that retrieving, exchanging, and stowing the frocks are necessary to their jobs. Under *Alvarez*, however, the fact that an activity is always essential to a principal activity may lend support to the conclusion that the activity is integral and indispensable, but is not alone sufficient to render the activity integral and indispensable. Thus, the plaintiffs' argument that retrieving, exchanging, and stowing are integral and indispensable simply on account of the fact that they are necessary for the performance of the employees' principal activities is not persuasive. As

12

these activities are at least "two steps removed" from the employees' productive activity, *Alvarez*, 546 U.S. at 42, they are not sufficiently integral and indispensable to the employees' principal activities as to be compensable and define the beginning and the end of the workday, consistent with the ruling in the Memorandum with respect to this issue.

## III.   Defendants' Motion to Alter or Amend

The defendants have moved to alter and amend that aspect of the Memorandum granting summary judgment for the plaintiffs with respect to the defendants' good faith defense to the plaintiffs' claim for liquidated damages.

As noted in the Memorandum, to prove that the good faith defense applies, the employer must demonstrate that its actions were in good faith and that it had reasonable grounds to believe that its actions were not a violation of FLSA. 29 U.S.C. § 260; *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002). The employer bears the burden of demonstrating good faith, and this burden is "substantial." *Elwell*, 276 F.3d at 840. To carry this burden, an employer must show evidence that it took "affirmative steps" to determine and meet FLSA's requirements. *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004). The mere lack of willfulness or negligence on the employer's part is not sufficient to establish good faith. *Id.* Furthermore, the award of liquidated damages is the norm, rather than the exception, in FLSA cases, and is mandatory unless the employer carries its burden of establishing that the good faith defense applies. *Id.*

The defendants assert that the court erroneously placed the burden of establishing that summary judgment was appropriate on them, rather than the plaintiffs, and that the plaintiffs failed to carry their burden. The defendants note, correctly, that at the summary judgment stage,

13

the burden is on the plaintiffs to establish the absence of a genuine issue of material fact warranting summary judgment. As stated in the Memorandum, on a motion for summary judgment, the moving party—here the plaintiffs—"must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the plaintiffs demonstrate that the nonmoving party—here the defendants—has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and *on which that party will bear the burden of proof at trial*," *id.* at 322 (emphasis added), such as the Section 260 good faith defense to liquidated damages at issue here. Indeed, the Sixth Circuit has noted that summary judgment on the question of the Section 260 good faith defense to liquidated damages is appropriate when an employer fails to provide evidence creating a genuine issue of fact as to its good faith and objective reasonableness. *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 968 (6th Cir. 1991) (citing *Celotex*, 477 U.S. at 323); *see also Block v. City of Los Angeles*, 253 F.3d 410 (9th Cir. 2001) (affirming summary judgment on liquidated damages where employer "did not present sufficient evidence to survive summary judgment on objective good faith"); *Lockwood v. Prince George's Cty., Md.*, No. 99-2487, 2000 U.S. App. LEXIS 15302 (4th Cir. June 29, 2000) (affirming summary judgment on liquidated damages where there was no evidence that employer attempted to reconcile its policy with the strictures of FLSA). To the extent that the defendants read the Memorandum as placing on them the burden of proving that summary judgment was not appropriate, they are mistaken. Nevertheless, the Memorandum will be amended to clarify that it is the plaintiffs who bear the burden of proving the absence of a material fact warranting summary judgment, that to carry this burden the plaintiffs were obliged

14

to demonstrate the absence of a material fact as to an essential element of the defendants' case, and that the plaintiffs succeeded in doing so.

The defendants claim that the plaintiffs did not carry their burden because, according to the defendants, the plaintiffs did not assert any facts relevant to the Section 260 good faith defense. This argument, however, is based on a myopic reading of the section of the plaintiffs' brief addressing the Section 260 good faith defense, which clearly incorporates, by reference, other sections of the plaintiffs' brief presenting evidence relating to the defendants' lack of good faith. (Docket No. 237 at 35.) The defendants further argue that this evidence may not be considered because it happened to appear in the section of the plaintiffs' brief addressing FLSA's Section 250 good faith defense to liability, *see* 29 U.S.C. § 259. Although the Section 259 good faith defense to liability is distinct from the Section 260 good faith defense to liquidated damages and involves a different analysis,[7] as the defendants rightly note, there is no reason why arguments articulated by the plaintiffs in support of summary judgment with respect to the Section 259 defense should not be entertained to the extent that they are also relevant to the Section 260 defense and were clearly incorporated therein.

In all of their submissions, the defendants provided scant evidence in support of their argument that the Section 260 good faith defense to liquidated damages applies. In a summary judgment brief filed by the defendants when this case was in its early years, the defendants claimed to have relied on an alleged DoL enforcement policy as evidence of their good faith.

---

[7]Although the defendants initially asserted both a Section 259 good faith defense to liability and a Section 260 good faith defense to liquidated damages, they did not oppose the plaintiffs' motion for summary judgment with respect to the Section 259 defense. (Docket No. 244 at 32.)

15

(Docket No. 67 at 22.)  Subsequently, however, this court rejected the defendants' assertion that the DoL's actions had established any such enforcement policy, (Docket No. 178 at 30-32), a fact noted by the plaintiffs in their summary judgment brief, (Docket No. 237 at 30).  Having debunked the one leg on which the defendants' good faith argument appeared to stand, the plaintiffs carried their burden of establishing the absence of a genuine issue of material fact as to the Section 260 good faith defense to liquidated damages.[8]

Moreover, nothing in the defendants' subsequent filings in opposition to summary judgment or in support of its motion to alter or amend provides any evidence that would support a finding that there exists a genuine issue of material fact as to the defendants' good faith.  The defendants argue that the compensability of the activities at issue here is still unsettled to the extent that litigation is currently pending in this, and other, fora.  However, the mere existence of litigation does not come close to establishing good faith where the defendants have not provided any evidence of their reliance on the existing litigation in determining that they would not compensate their employees for the activities in question here.[9]  Likewise, the defendants have

---

[8]The defendants cite an *American Law Reports* annotation listing certain types of evidence that may be considered with respect to the Section 260 good faith defense to liquidated damages, including prior judicial decisions or the actions of a government agency.  The defendants argue that, as the plaintiffs have not referred to any of these specific types of evidence to prove the lack of a genuine issue of fact as to the good faith defense, the plaintiffs have failed to carry their burden. (Docket No. 263 at 4.)  The types of evidence listed is by no means exhaustive, however, and the defendants point to no precedent that requires that a showing of good faith or the lack thereof be established by reliance on those types of evidence alone.

[9]The fact that the defendants themselves have been involved in many of the litigations on these matters further undermines their argument.  It would seem wildly unfair that the defendants should be able to essentially manufacture a good faith defense simply by virtue of their persistent litigation of these issues in the face of the DoL's ongoing efforts to ensure the defendants' compliance with FLSA..

16

not presented any facts—spare the bald assertion in their brief—that they relied reasonably in good faith on the existence of the *de minimis* rule to render them not liable for paying their employees for otherwise compensable work. Moreover, the defendants have not pointed to any evidence that demonstrates any attempt on their part to ascertain their obligations under FLSA and to conform their behavior to the statute, as is required to establish good faith. *Martin*, 381 F.3d at 584. Instead, the defendants' argument appears to be a post-facto attempt to manufacture an issue of fact as to their good faith when, in reality, there is no evidence to support that claim.

The plaintiffs established the absence of a genuine issue of material fact as to the application of the good faith defense to liquidated damages, as the defendants bear the burden of proving good faith at trial and as the defendants have failed to make a sufficient showing on an essential element of that defense. There is no error in the Memorandum's ruling on this issue, and its central holding on this issue will not be altered or amended.

Finally, this court will briefly address two minor issues raised by the defendants. First, the defendants note, correctly, that this court erred in stating in the Memorandum that "the only genuine issues of fact that exist go to the application of the *de minimis* rule," when, in fact, there also exist issues of fact with respect to the plaintiffs' meal period claim that were not resolved at the summary judgment stage. The Memorandum is thus amended to reflect this correction, and neither the Memorandum nor this decision should be interpreted as ruling on the applicability of the good faith defense to liquidated damages, as the question of liability with respect to the plaintiffs' meal period claim has not been adjudicated.

Second, the defendants assert that the court erred in the Memorandum in ruling that the defendants must prevail on the *de minimis* defense to avoid liquidated damages. In the

17

Memorandum, this court stated that "the defendants have not come forward with any facts that would justify a reduction in liquidated damages if the *de minimis* rule does not apply to the uncompensated work in which the plaintiffs engage." (Docket No. 260 at 40.) The defendants, however, have mischaracterized or misunderstood the import of the court's statement, which was intended to convey that, if and to the extent that the defendants prevail on their *de minimis* defense, liquidated damages will not be an issue. On the other hand, if the defendants do not prevail on their *de minimis* defense, then they are not entitled to a good faith defense to liquidated damages for the reasons discussed in detail *supra* and in the Memorandum. The statement was not intended to suggest that the question of whether the good faith defense to liquidated damages applies here is dependent on the outcome of the parties' dispute with respect to the *de minimis* defense, but rather only to indicate that the outcome of the dispute with respect to the *de minimis* defense may obviate the question of liquidated damages.

## CONCLUSION

For the reasons discussed herein, the motion for reconsideration filed by the plaintiffs will be denied, and the motion to alter or amend filed by the defendants will be denied as to the central rulings of the Memorandum.

An appropriate order will enter.

*[signature]*
ALETA A. TRAUGER
United States District Judge